LEW MOY et al v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 18, 1916.)

No. 4480.

1. CONSPIRACY ⬥43(6)—INDICTMENT—SUFFICIENCY.

An indictment under Penal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1913, § 10201) denouncing the offense of conspiring to violate the laws of the United States, charged that defendants conspired to bring and cause to be brought from Mexico by land into the United States, in violation of Act May 6, 1882, c. 126, 22 Stat. 61, § 11, as amended by Act July 5, 1884, c. 220, 23 Stat. 117 (Comp. St. 1913, §

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4298), Chinese persons not entitled to enter and remain, and that they were to be taken to Wyoming and elsewhere in the United States. *Held* that, as there need not be that definiteness or detail of averment necessary in a charge of the offense which was the subject of the conspiracy, the indictment was sufficient, though giving the mere outlines of the plot, for the matter might have been general in the minds of the conspirators.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 91; Dec. Dig. ☜43(6).]

2. CRIMINAL LAW ☜423(9)—PROSECUTION—EVIDENCE.

In a prosecution for conspiring to bring or cause to be brought into the United States, in violation of Act May 6, 1882, § 11, as amended by Act July 5, 1884, Chinese persons not entitled to enter, the conspiracy is not at an end the moment that the Chinese persons are transported across the international boundary, and acts and statements of one co-conspirator done or uttered thereafter in facilitating the purpose of the conspiracy, which was to evade the immigration officials, are admissible against others.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1000, 1001; Dec. Dig. ☜423(9).]

3. WITNESSES ☜199(1) — PRIVILEGED COMMUNICATIONS — ATTORNEY AND CLIENT.

Communications made in good faith to an attorney at law for the purpose of obtaining his official advice or assistance are privileged, though no fee is paid.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 749; Dec. Dig. ☜199(1).]

4. WITNESSES ☜199(1)—PRIVILEGED COMMUNICATIONS—STATEMENTS TO ATTORNEY.

Communications made in good faith to an attorney at law to obtain his official advice or assistance are privileged, though the attorney afterwards declines to act.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 749; Dec. Dig. ☜199(1).]

5. WITNESSES ☜199(2)—PRIVILEGED COMMUNICATIONS—STATEMENTS TO ATTORNEY.

Appellant, who with others was charged with conspiring to bring or cause to be brought into the United States from Mexico Chinese persons not authorized to enter, lived in a state distant from the place of trial, and shortly before trial, at the suggestion of his codefendant, consulted the attorney representing his codefendant for the purpose of employing him as local counsel. Appellant made communications to such attorney relative to the charge, but after conversations such attorney declined to act. *Held* that, notwithstanding his declination and the fact that no fee was paid, the communications were privileged, and it was error to require the attorney to disclose them; the rule not being changed by the fact that appellant's codefendant afterwards pleaded guilty on the advice of such attorney.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 750; Dec. Dig. ☜199(2).]

In Error to the District Court of the United States for the District of New Mexico; Wm. H. Pope, Judge.

Lee Moy and Sam Hee were convicted under Penal Code, § 37, of conspiracy to commit an offense by bringing into the United States Chinese persons not lawfully entitled to enter or remain in the country, and by aiding and abetting therein, in violation of Act May 6, 1882, § 11, as amended by Act July 5, 1884, and they bring error. Reversed and remanded.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Mahlon E. Wilson, of Salt Lake City, Utah (T. S. Taliaferro, Jr., and W. A. Muir, both of Rock Springs, Wyo., and J. C. Wood, of Salt Lake City, Utah, on the brief), for plaintiffs in error.

Summers Burkhart, U. S. Atty., of Albuquerque, N. M.

Before HOOK and CARLAND, Circuit Judges, and MUNGER, District Judge.

HOOK, Circuit Judge. Lew Moy, Sam Hee, and Hop Lee were indicted for a conspiracy to commit an offense against the United States (Penal Code, §37) by knowingly bringing and causing to be brought from Mexico by land into the United States Chinese persons not lawfully entitled to enter or remain in the latter country, and by aiding and abetting therein (23 Stat. 117, § 11). Hop Lee pleaded guilty. Lew Moy and Sam Hee were tried, convicted, and sentenced. They prosecuted this writ of error.

[1] Complaint is made of the indictment. In a case of this kind there need not be that definiteness or detail of averment necessary in a charge of the offense, which is the subject of the conspiracy. Dealy v. United States, 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545. The outlines of the plot or concert may well be as general in the minds of the conspirators as the prohibitions of the particular statute which they conspire to violate. It is said that the means to be employed are not set forth in the indictment. But the precise means may not have been a part of the concerted agreement or understanding. They may not have been predetermined, but left to the exigencies of the criminal enterprise as it progressed. It was expressly averred that the Chinese persons to be brought into the United States were not entitled to enter or to remain, that they were to be brought from Mexico and by land, and that they were to be taken to Rock Springs, Wyoming, and elsewhere in this country. The indictment was sufficient to inform defendants of the crime charged, and to protect them from a second prosecution for the same offense.

[2] It is also urged that the conspiracy was at an end the instant the Chinese whose illegal entry was procured and facilitated were brought across the international boundary, and therefore the trial court erred in admitting in evidence the subsequent acts and declarations of one conspirator against the others. This is too narrow a view of the crime charged. Successfully to consummate the unlawful introduction of the prohibited aliens required more than the mere bringing of them across the line. It was necessary to evade the immigration officials by transporting them into the interior and concealing their identity. The subsequent assistance by defendants to that end may well have been an essential part of the unlawful project. It is not necessary that each conspirator participate in each step or stage of the common general design. One of them may do one thing; another, another. Some may take major parts, while the participation of others may be in a minor degree. It may be said here that the evidence against the defendants was sufficient for the consideration of the jury.

[3-5] A serious question arises on the admission of the testimony of an attorney at law to conversations with defendant Sam Hee. Hee,

who lived in Wyoming, went with an attorney of that state to attend the trial at Santa Fé, N. M. On his way he stopped to see his codefendant, Hop Lee, who lived at Las Vegas, N. M. Hop Lee had employed a firm of attorneys at Las Vegas of whom Mr. Clark was a member. At his suggestion defendant Hee went to see Mr. Clark for the purpose of employing him as local counsel, if his Wyoming attorney, who had gone on to Santa Fé, had not already secured assistance there. After the conversations which ensued the employment was tendered, but Mr. Clark declined it. Against objections that they were privileged the trial court required Mr. Clark to testify regarding them and to narrate what Hee said. The testimony was prejudicial, not only to Hee, but also to his codefendant, Moy. Their defenses were so intricately related that injury to one necessarily injured the other. It is unimportant that Mr. Clark, when he talked with Hee, had already decided to advise his client, Hop Lee, to plead guilty. Besides, the decision had not then been communicated to Lee, nor was Hee advised of it. Whatever was in Mr. Clark's mind, the situation was peculiarly one inviting Hee's trust and confidence. Mr. Clark was an attorney at law, practicing in the state where the trial was to be had. It was properly desirable for defendant Hee, who lived in a distant state, to have the aid of local counsel, especially Mr. Clark, who was already counsel for one of his codefendants. The subject of their conferences was manifestly of a character covered by the immunity from enforced disclosure. The statements made were not by way of confession, nor in casual discourse with an outsider. In questions of this kind consideration should be given to the attitude, the intent and belief, of the person seeking advice or assistance. For example, communications have been excluded when made to a detective who falsely pretended to be an attorney at law. People v. Barker, 60 Mich. 277, 27 N. W. 539, 1 Am. St. Rep. 501. See also State v. Russell, 83 Wis. 330, 53 N. W. 441.

Communications made in good faith to an attorney at law for the purpose of obtaining his professional advice or assistance are privileged. The payment of a fee is not essential, Alexander v. United States, 138 U. S. 353, 11 Sup. Ct. 350, 34 L. Ed. 954. Nor does it matter that after the communications the attorney declines to act. Strong v. Dodds, 47 Vt. 348; Sargent v. Hampden, 38 Me. 581; Thorp v. Goewey, 85 Ill. 611; Cross v. Riggins, 50 Mo. 335; Denver Tramway Co. v. Owens, 20 Colo. 107, 36 Pac. 848. There is some diversity of opinion upon this question, but the above is better sustained by sound principle. It is in accord with the common custom of those who seek professional advice. The man who goes to the lawyer does so as a client, and the lawyer who listens to him does so professionally. The communications preliminary to actual retainer or engagement are frequently necessary, and they should be unconstrained and without apprehension of disclosure. That this should be so is of public interest, and is essential to the intelligent and honorable practice of the law. Various obstacles to a definite contractual relation may appear from the communications—prior inconsistent duty to others, ethical professional standards, time and opportunity, disagreement as

to compensation, and so on—but generally the preliminary conference must be had, and the disclosures made are within the spirit of the immunity. The fair and reasonable operation of the admitted general rule requires that liberality of construction.

The sentences of both Moy and Hee are reversed, and the cause is remanded for a new trial.