**RETTICH et al. v. UNITED STATES.**
No. 3054.

Circuit Court of Appeals, First Circuit.
June 9, 1936.

William R. Scharton, of Boston, Mass. (Joseph E. Fitzpatrick, of Providence, R. I., and John J. Crehan and Maurice Palais, both of Boston, Mass., on the brief), for appellants.

John A. Canavan, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The defendants were found guilty by a jury and sentenced on two indictments: One alleging a conspiracy to assault a certain mail truck driver; and by the use of a dangerous weapon putting the life of said driver in jeopardy, who then had in his custody certain registered mail containing a large amount of money; and to rob said truck driver of said registered mail, and conceal the same for the purpose of keeping possession of the results of the robbery; and that the conspiracy continued until the finding of the indictment.

The second indictment was for committing an assault upon the mail truck driver with a dangerous weapon while having in his lawful charge, control, and custody certain registered mail matter of the United States, and thereby effecting a robbery of said registered mail.

Before going to trial, the two cases were, on motion of the government, and without objection by either defendant, consolidated for trial.

The proceedings that followed after the respondents were placed at the bar for trial were not unusual in criminal cases of importance. Counsel for respondents filed a motion for a bill of particulars; a motion to quash the indictments; a plea in abatement and demurrer; a special plea in bar; and at the close of the evidence a motion for a directed verdict—all of which motions were overruled by the court, except the motion for a bill of particulars, which was granted in part by requiring

120

the government to state the place in Fall River where the assault on the mail carrier occurred.

The exceptions to the overruling of the demurrer and plea in abatement by defendants Rettich, McGlone, Dugan, and Harrigan have been waived. One of the conspirators, Merola, has died, the defendants Hornstein and Fisher pleaded guilty during the trial, and the defendants Rettich, McGlone, Dugan, and Harrigan were found guilty under both indictments and bring the case to this court on appeal, assigning as errors on which they rely: (1) That the court erred in denying to the defendants the right to more than ten peremptory challenges; (2) that the court erred in refusing to declare a mistrial because of certain alleged prejudicial remarks by government's counsel in opening the case to the jury; (3) that the court erred in explaining to the jury that the defendant Hornstein, who testified for the government, pleaded guilty with the consent of all the parties in interest; (4) that the court erred in refusing to strike out all the evidence relating to the conspiracy charge and to direct a verdict for each of the defendants; (5) that the court erred in refusing to strike out all the evidence obtained by virtue of certain search warrants issued in the case, on the ground that the search warrants were invalid and the evidence obtained thereby was incompetent; (6) that the court erred in certain instructions given to the jury, and in admitting and excluding certain evidence.

While the defendants assign 29 errors, they may be considered under the above headings.

■ The assignment of error for refusal to grant the bill of particulars as requested is not argued and may be considered waived.

■ Where two or more indictments are consolidated for trial, they, in effect, become as separate counts in one indictment. Without objection by either respondent, they were consolidated in this case. McElroy v. United States, 164 U.S. 76, 77, 17 S.Ct. 31, 41 L.Ed. 355; Solomon v. United States (C.C.A.) 297 F. 82. Having made no objection to the consolidation, defendants cannot now claim error in denying them more than ten peremptory challenges. Kettenbach et al. v. United States (C.C.A.) 202 F. 377, 381, 382, certiorari denied 229 U.S. 613, 33 S.Ct. 772, 57 L.Ed. 1352;

Emanuel v. United States (C.C.A.) 196 F. 317. A different rule may exist where cases are merely tried together, but not consolidated.

■ There was no prejudicial error in the remarks of the government's attorney in his opening. If there were, the court removed any prejudice, that might have resulted, from the minds of the jury by explaining to them, on objection by defendants' counsel, that the opening remarks of counsel were not evidence for them to consider; that they were to reach their verdict on the evidence introduced before them.

■ At the time the defendant Hornstein retracted his plea of not guilty, and pleaded guilty, defendants' counsel requested the court "that the jury be apprised of the fact that Hornstein had pleaded guilty in their absence and had become a state's witness."

The judge, in response to this request, said to the jury: "With the consent of all the parties in interest here, I desire to announce to you that the defendant Hornstein has withdrawn his plea of not guilty to each of the indictments * * * and has pleaded guilty to each indictment."

Counsel for the other respondents objected to this statement of the court. Their objection was based on a misconception of the language used. What the court said was, and the jury must have so understood it, that the judge's announcement was with the consent of the other defendants, and not that Hornstein's retraction and plea of guilty was with their consent.

■ The main contention of the defendants Rettich, McGlone, Dugan, and Harrigan is that the evidence of certain receptacles found buried in the Rettich lawn containing $10,000 in new bills and a bag of nickels, a part of the fruits of the robbery, was obtained on an illegal search warrant issued by the United States commissioner in violation of the Fourth and Fifth amendments to the United States Constitution, or by an illegal state search warrant issued to a state police officer, and any evidence obtained under either warrant was not competent on which a grand jury could find an indictment, or for the consideration of the traverse jury, and the trial judge erred in refusing to quash the indictments and in refusing to strike out the evidence relating to the finding of a

metal box containing the bills and the tin box containing the nickels.

Counsel for defendants did not orally argue the assignment of error that the court erred in refusing to quash the indictments nor treat it in their brief. We assume that this assignment also has been waived. If it has not been waived, the granting of the motion depends largely on the next question we are to consider. They devote the greater part of their entire argument, both orally and in their brief, against the validity of the seizure of these articles under the search warrants and its competency as evidence.

Their first contention is that the search warrant issued by the United States commissioner was issued without probable cause; that the affidavit upon which it was issued did not set forth facts sufficient to establish the required grounds for its issue; second, that it was not executed and a return made to the commissioner within ten days after its date; third, that the state search warrant was invalid because it failed to meet the requirements of the federal statutes; fourth, that the evidence obtained by the state officers under an invalid state warrant was not returned to the court issuing the warrants, but was turned over to the federal officials in aid of a criminal prosecution of a federal offense, and was inadmissible in evidence on objection by respondents.

It is unnecessary to consider in full the attacks upon the federal search warrant, though, if the articles had been seized by the federal officers under the federal warrant, it might have been sustained on the record. It is sufficient to say in passing that what the affidavit contained on which it was issued is not before this court, and the commissioner's findings as to probable cause are conclusive, unless it is shown to the contrary. Gracie v. United States (C.C.A.) 15 F.(2d) 644, 646; United States v. Napela (D.C.) 28 F.(2d) 898, 904; nor is the failure of the marshal to make a return on the federal warrant within ten days fatal. The return on a search warrant is a ministerial act, and can be made within a reasonable time; and the doctrine of trespasser ab initio has no application to criminal cases. Benton v. United States (C.C.A.) 70 F.(2d) 24, 26; Rose v. United States (C.C.A.) 274 F. 245, 250, 251.

In considering the evidence of Hornstein in this case, who was obviously one of the conspirators, it should be remembered that the conspiracy did not end with the assault upon the driver of the mail truck nor until the final division of the loot. It is so alleged in the indictment. The sworn testimony of Hornstein, therefore, in court may be taken against all the other defendants, as the fruits of the robbery had not been all divided up. Bellande v. United States (C.C.A.) 25 F. (2d) 1, 2; Murray v. United States (C. C.A.) 10 F.(2d) 409, 411; Lew Moy v. United States (C.C.A.) 237 F. 50, 52; Benton v. United States, supra; Gandreau v. United States (C.C.A.) 300 F. 21, 26; Dumbra et al. v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032. The rule that declarations made after the conspiracy has terminated are inadmissible as against the other conspirators is not applicable to sworn testimony of one conspirator as to transactions occurring before the termination of the conspiracy. Blakeslee et al. v. United States (C.C.A.) 32 F.(2d) 15, 17.

Whatever technical defects can be pointed out in obtaining the federal warrant or in the procedure thereunder, we think the evidence shows that the search which resulted in the finding of the money buried in the lawn of the Rettich premises was made under the direction of a state police officer, who was then acting under a state search warrant, and under whose supervision the two ERA men, who unearthed it, were working. When it was found, it was turned over to Chief Inspector Breslin of the Post Office Department, who was on the premises by virtue of the federal warrant, and Capt. Buchanan of the Providence police.

It is clear that a search warrant could be issued under the Rhode Island statutes, section 6070 of the Gen.Laws of Rhode Island 1923 (chapter 397, § 13), to search for stolen goods, which provides that:

"Every person who shall fraudulently receive any stolen money or other articles, knowing the same to be stolen, shall be deemed guilty of larceny."

The state warrant was not issued at the instigation of any federal officer or agent. Lieut. Stenhouse, who was directing the digging when the money was found, testified that in applying for a state warrant he received his orders from Superintendent Kelly of the Rhode Island State Police; that no postal officer advised or was present when it was obtained. The

Fourth Amendment to the Federal Constitution has no application to searches and seizures by state officers. Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas. 1915C, 1177; Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97; Miller v. United States (C.C.A.) 50 F.(2d) 505; Schroeder v. United States (C.C.A.) 7 F.(2d) 60, 63.

■ While it does not appear that the directions of the state warrant were complied with, since the goods seized were not returned to the court issuing the warrant, but were turned over to a postal inspector and kept in his custody, evidence secured even by an unlawful search and seizure by state officers, when not acting in behalf of the federal government, is admissible in a prosecution for a federal offense in the United States courts, whether seized under an invalid search warrant or without any warrant at all. Miller v. United States, supra, certiorari denied 284 U.S. 651, 52 S.Ct. 31, 76 L.Ed. 552; Lerskov v. United States (C.C.A.) 4 F.(2d) 540; Schroeder v. United States, supra.

In the case of Schroeder v. United States, the Circuit Court of Appeals for the Second Circuit fully considered the question of the application of the Fourth Amendment of the Federal Constitution to state officials, and whether a seizure of property under an invalid search warrant, or without a search warrant, by state officials may be used in federal courts in criminal cases, and the court said:

"The cases abundantly show that evidence obtained by state or municipal officers under an invalid search warrant, or without a warrant, may be used in a federal court in a criminal case under circumstances analogous to those in the case at bar. * * *

" 'It does not appear that the policemen acted under any claim of federal authority. The Fourth Amendment is not directed to misconduct of state officials. Its limitations are confined to the federal government and its agencies. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746; Twining v. New Jersey, 211 U. S. 78, 29 S.Ct. 14, 53 L.Ed. 97; Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915C, 834, Ann. Cas.1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S. Ct. 182, 64 L.Ed. 319 [24 A.L.R. 1426]. * * * ' "

■ The presence of a federal officer at the time of the seizure is not sufficient to show that the search was a part of a federal procedure or for the enforcement of a federal law. Miller v. United States, supra; Malacrauis v. United States (C.C.A.) 299 F. 253, 255; Gatterdam v. United States (C.C.A.) 5 F.(2d) 673; Crawford v. United States (C.C.A.) 5 F.(2d) 672; Gowling v. United States (C.C.A.) 64 F. (2d) 796, 799.

This case is distinguishable from the case of Gambino et al. v. United States, 275 U.S. 310, 318, 319, 48 S.Ct. 137, 72 L. Ed. 293, 52 A.L.R. 1381, where there was no state law, which the state officers could be enforcing at the time of the seizure; and from the case of Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520, where, though no state law was involved, only a state warrant was issued, and the federal officers accompanied the state officers. The Byars or the Gambino Case, therefore, has no application to this case. Here the state officers had a right to search for stolen goods. The mere fact that the property seized was turned over to a federal officer and a state officer is not conclusive that they were engaged in a joint enterprise. It was retained in the possession of the federal officer. Ex parte Vilarino (C.C.A.) 50 F. (2d) 582, 585, 586; In re Milburne (C.C.A.) 77 F.(2d) 310, 311, 312. In the last-cited case the court said:

"The federal government may avail itself of evidence procured by state officers through an illegal search and seizure, provided no federal officer or agent has participated therein."

■ The burden was on the respondents to show that the search was a joint enterprise to assist the federal government, and the government was trying to do indirectly what it could not do directly. See United States v. Long (D.C.) 52 F.(2d) 901, 902; Miller v. United States, supra; Myers v. United States (C.C.A.) 49 F.(2d) 230, 231, certiorari denied 283 U.S. 866, 51 S.Ct. 657, 75 L.Ed. 1470.

■ Certain of the assignments of error related to the admission and exclusion of evidence and a motion of the respondents to strike out the evidence of the witness Hornstein; but the assignment as to the evidence admitted fails to comply with rule 11 of this court, since counsel failed to set forth the specific evidence objected to. Goldstein v. United States (C.C.A.)

·63 F.(2d) 609, 615; Price v. United States (C.C.A.) 68 F.(2d) 133, 135. The evidence excluded in cross-examination by respondents' counsel, to which exception was taken, related to a matter within the exclusive jurisdiction of the United States commissioner; Gracie v. United States, supra. The latitude and scope of cross-examination is within the sound discretion of the trial court, and no abuse of that discretion exists here. Blitz v. United States, 153 U.S. 308, 312, 14 S.Ct. 924, 38 L.Ed. 725; Davis v. Coblens, 174 U.S. 719, 19 S.Ct. 832, 43 L.Ed. 1147.

The general assignments of error as to the admission of evidence relate to the testimony of the Officer Stenhouse as to what he did in obtaining the state search warrant, making the search, and disposal of the property found, and the testimony of Postal Inspectors Breslin, Anderson, and Chatto and the ERA man, Morrison, as to the boxes and money found in the lawn of the Rettich premises. Since the boxes and money were properly admitted in evidence, the testimony of these witnesses in relation to the finding of the boxes and their contents was also admissible. Whether the state search warrant was valid or invalid, the evidence of Lieut. Stenhouse as to the search under it and the disposition of the boxes and money found was admissible in a federal prosecution, though the state statute was not followed in returning the property seized to the state court issuing the warrant.

Again, it is impossible to tell from the assignments of error what particular part of the testimony of these witnesses it is claimed the receipt of which constituted error, since the testimony appears in the record entirely in narrative form and the assignments of error were general. The contention that all acts of the Officer Stenhouse claimed to have been done under the state search warrant were in reality by virtue of the federal warrant is not sustained by the record.

The motion to strike out Hornstein's testimony was properly refused. Hornstein was a fellow conspirator. The conspiracy was not at an end at the time of seizure. The entire fruits of the robbery have never been divided up. Bellande v. United States, supra; Murray v. United States, supra; Coates v. United States (C.C.A.) 59 F.(2d) 173, 174. In Murray v. United States, supra, the court said:

"Nor are the acts and declarations of Murray and Fahy after the robbery to be excluded on the ground that they occurred after the conspiracy had come to an end. Among the offenses which the indictment charged as the objects of the conspiracy were the concealing and the possessing of the fruits of the robbery, and these crimes were going on at the time the acts were done and the declarations made. The conspiracy had not yet come to an end." .

In the case of Bellande v. United States, supra, the court stated:

"The object of the conspiracy was not accomplished by the mere taking of the mail out of the possession of the carrier, but continued until the robbers and their confederates could have an opportunity to convert it to their own use."

And in Coates v. United States, supra, the court said:

"A conspiracy once established is presumed to continue until the contrary is established. Hyde v. United States, 225 U. S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann. Cas.1914A, 614; Miller v. United States (C.C.A.) 277 F. 721."

As to the assignments of error relating to the judge's charges, they are without merit. The requested instructions were either inapplicable to the facts or were statements of well-known principles applicable to the crime of conspiracy and were embodied in substance in the charge.

The motion for a directed verdict for each of the defendants, Rettich, McGlone, Dugan, and Harrigan, was properly overruled. There was abundant evidence against each of them to warrant their conviction. McGlone and Dugan were recognized by the mail truck driver. Harrigan was a truck driver, and some one had to drive Rettich's truck into which the mail sacks were transferred after the robbery. He, with the others, was at Rettich's house the night before the robbery, and was seen coming from the Rettich garage after the truck returned, in company with the other conspirators. His later replies to questions as to his whereabouts on the day of the robbery indicated strongly a consciousness of guilt.

Rettich, while not present at the time of the robbery, harbored the conspirators, McGlone, Dugan, and Harrigan, at his house before and after the robbery. The jury could have found from the testimony of the witness Steele that he went

with them into his cellar with what appeared to have been the fruits of the crime. He admitted that the box in which the money was found buried was his, and his actions on the morning of the robbery clearly showed a participation in the conspiracy. He was directly connected by Hornstein's testimony with planning the crime; and, though not actually present at the time of the robbery, he was properly indicted as a principal. He was an acknowledged violator of law and his house was a veritable arsenal of weapons: sawed-off shot guns, machine guns, revolvers, a gun with a silencer attached; and the men McGlone, Dugan, Harrigan, and Fisher, who pleaded guilty but attempted to shield Rettich in his testimony, were all friends and associates of Rettich in violating the law.

The case was well and carefully tried in the District Court, and the issues were clearly kept before the minds of the jury, and fully and correctly explained in the charge of the presiding judge.

The assignments of error are without merit.

The judgments of the District Court are affirmed.