**UNITED STATES of America**

v.

**Tullio Ralph PERRONE, Irving Wilson, Nathan Goldberg, George Effron, Morris Gastwirth, Renato Manente, Sam Rich and Thomas Rocco Lo Basso, Defendants.**

United States District Court
S. D. New York.
April 8, 1958.

Paul W. Williams, U. S. Atty. for
S. D. New York, New York City, for the
United States, William K. Zinke, Asst. U.
S. Atty., New York City, of counsel.

Albert E. Schwartz and Curran,
Mahoney, Cohn & Stim, New York City,

for defendants, Morris Gastwirth and George Effron, Albert E. Schwartz and Menahem Stim, New York City, of counsel.

Henry & Myers, New York City, for defendant, Sam Rich, Allen Murray Myers, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

In a three count indictment defendants Gastwirth, Effron and Rich and their co-defendants Perrone, Goldberg, Manente, Wilson and LoBasso, were charged with (I) receiving and having in their possession woolen goods valued at more than $100 which had been stolen while moving as a shipment of freight in interstate commerce in violation of 18 U.S.C. § 659 and 18 U.S.C. § 2, (II) transporting such goods valued at more than $5,000 in interstate commerce knowing them to have been stolen in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2, and (III) conspiring to violate Section 2314 by transporting such stolen goods in interstate commerce knowing them to have been stolen in violation of 18 U.S.C. § 371.

Defendants Perrone, Goldberg, Wilson and LoBasso pleaded guilty to the conspiracy charge and there was severance as to them. The case was tried to a jury before me against the remaining defendants, Manente, Rich, Gastwirth and Effron.

A motion for judgment of acquittal on all counts by defendant Manente was granted at the close of the Government's case. At the close of the whole case motions for judgment of acquittal by defendants Gastwirth and Effron on the first count (possession of stolen goods under 18 U.S.C. § 659) were granted. Decision was reserved on similar motions by defendant Rich as to all three counts, and by defendants Gastwirth and Effron as to the second and third counts, and these counts went to the jury. The jury acquitted defendant Rich on the first substantive count (possession) and on the second substantive count (transporta-

tion), and acquitted defendants Gastwirth and Effron on the second substantive count which remained against them. The jury, however, disagreed as to all three defendants on the third count charging conspiracy to transport stolen goods in interstate commerce knowing them to have been stolen, the substantive offense charged in the second count.

All three defendants renewed their motions for judgment of acquittal on the conspiracy count on which decision had been reserved. These motions were denied on the ground that there was ample evidence in the record on this count to go to the jury.

Defendants Gastwirth and Effron also moved to dismiss the conspiracy count on which the jury had disagreed and defendant Rich made a separate motion to the same effect. These motions were upon the grounds that (a) in view of the verdicts of acquittal on the substantive transportation count, a re-trial of the conspiracy count would place defendants in double jeopardy, and (b) that the verdicts of acquittal were res judicata on the conspiracy count. It is these motions which are before me for decision.

The following facts are virtually undisputed:

On May 12, 1955, 224 bales of woolen cloth were shipped from Packard Mills in Webster, Massachusetts, destined for Cohen, Geiss & Warshaw, Packard Mills' exclusive agents in New York, and consigned to a New York warehouse. They were picked up at the Packard Mills plant in Webster by truck of the New England Transportation Company. The truck arrived at the terminal of that company in Maspeth, Long Island, sometime during the early morning of May 13 and was then to have been driven to the warehouse of the consignee in Manhattan. The truck was left by the driver some distance away from the terminal, and when he returned to pick it up it was missing. Several days later the truck was found abandoned in Brooklyn with all the bales of woolen goods removed. The thieves were not found.

The bales so stolen consisted of cloth of a variety of colors, with a price range in the wholesale market of from $2.85 to $3.75 per yard, or an average price of $3.30 per yard and were worth some $40,-000 at these prices. Each bale was marked with a small metal tag sewn in the cloth bearing the name of Packard Mills, and also bore a yellow ticket or tag bearing the name of Packard Mills and Cohen, Geiss & Warshaw, exclusive agents, and stating the lot, style and bale number. The bale number was also marked on the bale itself.

On June 1, 1955 agents of the FBI discovered 216 of the 224 bales which had been stolen at the plant of Gastwirth Brothers, manufacturers of children's clothing, in Philadelphia. The defendants Gastwirth and Effron were the sole partners in this business.

The defendant Gastwirth claimed that he had purchased these goods on May 26, 1955 at his New York office from the defendant Rich, a jobber in piece goods who carried on a small odd lot business in New York and was a connection of Gastwirth or Effron by marriage. The price was $1.50 per yard. Gastwirth had the option of returning any goods that he could not use. He did not see the goods before he purchased them but only one small swatch of material shown him by Rich. Nor did he know the amount of yardage he was purchasing or the colors.

Gastwirth arranged with Rich to have the goods delivered to the Gastwirth Brothers plant in Philadelphia. It was originally contemplated that the goods would be delivered that night (May 26), and Gastwirth telephoned his partner Effron in Philadelphia to make arrangements to receive them. However, the goods did not arrive at the Gastwirth Brothers plant until the early morning of May 27 before the plant had opened. They arrived in what were described as rather shabby looking trucks with no identifying marks on them, accompanied by the co-defendants Perrone and Lo-Basso, both of whom pleaded guilty to the conspiracy charge. At about the same time the co-defendant Goldberg, who also pleaded guilty, and who testified for the prosecution, also arrived at the Gastwirth Brothers plant with the co-defendant Wilson.

Employees of Gastwirth Brothers, under the supervision of defendant Effron, were waiting to help unload the trucks. As the goods were unloaded the original wrappings bearing the name of Packard Mills' consignee, and the yellow mill tags bearing the name of Packard Mills and its exclusive selling agent, Cohen, Geiss & Warshaw, were torn off each bale. Employees of Gastwirth Brothers, who were assisting in the unloading under the direction of the defendant Effron, placed white tags on each bale containing the lot, bale and style number which had been on the yellow mill tickets. The goods were placed on the third floor of the Gastwirth Brothers premises and a tally was taken of the yardage by Goldberg, Perrone and their associates.

After the tally of the yardage had been taken at the Gastwirth Brothers plant, Goldberg or Perrone demanded that Effron pay the truckmen who had delivered the goods for their services. After talking with Rich in New York Effron paid the truckmen $100. Goldberg then demanded payment on account of the purchase price. By this time Gastwirth had arrived from New York, and after consultation with Effron paid $2,000 in cash to Goldberg, who refused a check, as a payment on account.

It was determined that some 82 of the 216 bales were of black cloth which Gastwirth Brothers could not use, and it was contemplated that these goods were to be returned to the sellers, and Rich was so advised. Gastwirth returned to New York after the ensuing Memorial Day weekend and, on May 31, 1955, pursuant to arrangement, paid an additional $5,-846 in cash to Rich on account of the total purchase price of $12,846 based on yardage of the goods he was to keep at $1.50 per yard. Arrangements were made to pay an additional $5,000 in cash to Rich the next day in payment of the balance.

However, when Rich arrived at Gastwirth's New York office on June 1 to col-

lect this sum the goods had already been found on the premises of Gastwirth Brothers by the FBI and FBI agents were already talking to Gastwirth. All three of the defendants on trial were then questioned by the FBI and they all made statements.

There was dispute as to the other facts. It appeared that Goldberg and Wilson had brought the stolen goods to the attention of Rich on May 26, and that Rich had immediately gotten in touch with Gastwirth for the purpose of selling the goods to him. Rich claimed that he had purchased the goods from Goldberg and Wilson. Goldberg, who testified for the prosecution, said that he and Wilson had brought the goods to Rich's attention at the request of Perrone, who had possession of them, and that Rich, with their help, had then arranged with Perrone to purchase the goods from him.

All three defendants on trial denied that they knew the goods were stolen at any time prior to the visit of the FBI to the Gastwirth Brothers plant on June 1. To establish that the defendants had such knowledge, the Government relied on circumstantial evidence, including the nature of the transaction, the manner in which it was carried out, both in New York and on delivery in Philadelphia, the low price paid for the goods in the light of the seasonal demand and the normal price for such merchandise, the manner in which payments were made, and similar indicia, as well as portions of the statements made by the defendants to the FBI and the testimony of the co-defendant Goldberg as to his part in the transactions and his dealings and conversations with the various defendants.

It is unnecessary to detail this evidence. But there was sufficient from which the jury could have found that the defendants had knowledge that the goods were stolen either prior to the completion of the substantive offense by delivery of the merchandise to the Gastwirth Brothers plant in Philadelphia on the morning of May 27, or prior to the time when the conspiracy came to an end when the FBI found the goods in the Gastwirth Broth-

ers plant and began questioning the defendants on June 1.

Thus, the principal issue which the jury had to resolve was whether or not the defendants, having participated with the co-defendants in transporting these stolen goods from New York to Philadelphia either as principal actors or as aiders and abettors, had done so "knowing them to have been stolen."

On the substantive count of transportation the jury was instructed that the transportation was complete when the goods came to rest in the plant of Gastwirth Brothers in Philadelphia on the morning of May 27, and that in order to find the defendants guilty under this count they must find that the defendants knew that the goods were stolen before the transportation was so completed.

On the conspiracy count, however, the situation was different. Both the allegations of the indictment, including the overt acts alleged therein, and the proof tended to show that the conspiracy did not come to an end on the morning of May 27 when delivery was completed, but continued until June 1 when the FBI discovered the goods on the Gastwirth Brothers premises and commenced questioning the defendants. The jury was charged that in order to find the defendants guilty on the conspiracy count it was not necessary for them to find that defendants had knowledge that the goods were stolen prior to the completion of the delivery, but that it was sufficient if they found that defendants had such knowledge at any time before the continuing conspiracy came to an end on June 1 and participated in the conspiracy with such knowledge. In such event defendants were then chargeable with all the acts of their co-conspirators from the outset and were equally guilty with them if the conspiracy had been proved.

It was under this charge that the jury acquitted all three defendants on the substantive count of transportation, and disagreed as to all three on the conspiracy count.

Defendants' contention that the acquittal on the substantive count bars a re-

trial of the conspiracy count because defendants would thereby be placed in double jeopardy is plainly without merit.

The test of whether a defendant has been placed in double jeopardy as proscribed by the Fifth Amendment is not whether he has already been tried for the same *acts* but whether he has been put in jeopardy for the same *offense.* The second offense must be precisely the same in law and fact as the former if the plea is to be sustained. If an act is an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt a defendant from prosecution and punishment under the other. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306; Moorehead v. United States, 5 Cir., 270 F. 210.

It is well settled that a conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy. Each offense has different elements and acquittal or conviction of a substantive crime or of aiding and abetting in the commission of a substantive crime does not, with rare exceptions, bar prosecution for conspiracy to commit the substantive crime. United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211; Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489.

The case at bar does not fall within the narrow exceptions to this rule as the defendants contend. These exceptions are confined to cases where the substantive crime is such that concerted action between two or more persons is logically necessary to its completion, e. g., giving and receiving a bribe, United States v. Dietrich, C.C.D.Neb., 126 F. 664; giving and receiving an unlawful rebate, United States v. New York Central & H. R. R. Co., C.C.S.D.N.Y., 146 F. 298; the buying and selling of whiskey, United States v. Katz, 271 U.S. 354, 46 S.Ct. 513,

70 L.Ed. 986; adultery, bigamy or dueling, 2 Wharton, Criminal Law, § 1339, 5 R.C.L. 1072. In such cases a charge of conspiracy to commit the substantive crime will not lie against the two participants in the criminal transaction since the concert of action which the conspiracy charges is implicit in the commission of the substantive crime itself.

But the mere fact that the evidence in the case at bar showed that there was concerted action among the defendants and the alleged co-conspirators to effect the illegal transportation charged does not bring this case within these exceptions. For the offense of transportation in violation of Section 2314 or of aiding and abetting in the commission of this offense, does not in itself require any plurality of agents within the meaning of these cases. See Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67. And, of course, there is no double jeopardy merely because a charge upon which a jury disagreed is retried. United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165; United States v. Harriman, D.C.S.D.N.Y., 130 F.Supp. 198.

Thus, there is no double jeopardy here.

However, defendants' contention that res judicata is a defense to a second prosecution rests on a somewhat different footing. While res judicata may in some criminal cases have the identical effect as double jeopardy, it may also be a complete defense by way of collateral estoppel where *double jeopardy is plainly* inapplicable. United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161; Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180; United States v. De Angelo, 3 Cir., 138 F.2d 466; Cosgrove v. United States, 9 Cir., 224 F.2d 146; note 147 A.L.R. 991.

In general, the doctrine "operates to conclude those matters in issue which the verdict determined though the offense be different." Sealfon v. United States, supra, 332 U.S. at page 578, 68 S.Ct. 239. See, also, United States v.

Adams, 281 U.S. 202, 205, 50 S.Ct. 269, 74 L.Ed. 807.

The defendants contend that Sealfon requires a holding that a second trial of the conspiracy count is barred by the acquittal on the substantive count under the res judicata doctrine.

In Sealfon the defendant had been acquitted by a jury of a conspiracy with one Greenberg, his co-conspirator, to defraud the United States of its governmental function of conserving and rationing sugar by presenting false invoices and making false representations to a ration board that certain sales of sugar products were made to exempt agencies in violation of 18 U.S.C. § 72. The question was whether he could thereafter be tried upon another indictment charging him with the substantive offense which was the object of the alleged conspiracy of which he had been previously acquitted—the uttering and publishing as true the false invoices (18 U.S.C. § 550) and whether it was error to admit the evidence in the first trial at the second.

The only question was "whether the jury's verdict in the conspiracy trial was a determination favorable to petitioner of the facts essential to conviction of the substantive offense. This depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial." 332 U.S. at page 578, 68 S.Ct. at page 239.

On the conspiracy trial the core of the case was a letter written by defendant to his co-conspirator Greenberg pursuant to an agreement with him and the circumstances surrounding this transaction and to be inferred from it. The jury was told that the defendant must be acquitted if there was reasonable doubt that he conspired with Greenberg. The jury returned a verdict of acquittal.

Mr. Justice Douglas, writing for the Court said: "Viewed in this setting, the verdict is a determination that petitioner, who concededly wrote and sent the letter, did not do so pursuant to an agreement with Greenberg to defraud." 332 U.S. 580, 68 S.Ct. 240.

At the second trial the prosecution attempted to show that the defendant wrote the letter pursuant to an agreement with Greenberg to defraud. The Court said (332 U.S. at page 580, 68 S.Ct. at page 240) that this

" * * * was a second attempt to prove the agreement which at each trial was crucial to the prosecution's case and which was *necessarily* adjudicated in the former trial to be non-existent. That the prosecution may not do." [Italics supplied.]

The court therefore held that the earlier verdict of conviction on the conspiracy charge precluded a later conviction for the substantive offense and reversed.

█ It is quite clear from Sealfon and subsequent cases applying the doctrine of res judicata in criminal cases that, in order for the doctrine to apply, there must have been a definite determination of an issue favorable to the defendant in the prior trial, and such determination must be inconsistent with the guilt of the defendant in the subsequent proceeding. To put it another way, an issue essential to a conviction in the second trial must have been determined favorably to defendant in the prior proceeding, either expressly or by necessary implication. See comments of Mr. Justice Douglas on Sealfon in United States v. Williams, 341 U.S. 70, 95, 71 S.Ct. 581, 95 L.Ed. 758; United States v. Curzio, 3 Cir., 170 F.2d 354; United States v. Rainone, 2 Cir., 192 F.2d 860; United States v. Kenny, 3 Cir., 236 F.2d 128; United States v. Cowart, D.C.D.C., 118 F.Supp. 903; cf. Restatement of Judgments, § 68, subdiv. 1.

Thus, in the case at bar it matters not that evidence which was before the jury on the substantive count will also be before the jury on the conspiracy re-trial and that issues raised by such evidence must be found against the defendants in order to convict. The test is whether the first jury, either expressly or by nec-

essary implication, found any of such issues in defendants' favor in reaching its verdict of acquittal on the substantive count.

In order to determine whether the judgment of acquittal in the case at bar is a bar to the second trial of the conspiracy count, the instructions under which the verdict was rendered "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." United States v. Sealfon, supra, 332 U.S. at page 579, 68 S.Ct. at page 240. When the instructions on the first trial are viewed in this framework it becomes apparent that the jury's verdict did not necessarily, or by reasonable implication, determine in defendants' favor any issue required to be resolved upon a conspiracy re-trial.

Defendants' argument to the contrary rests upon the mistaken premise that the conspiracy charged in the indictment and the substantive offense of transportation both ended at the same time— when the stolen goods were delivered to the plant of Gastwirth Brothers in Philadelphia on the morning of May 27. But that is not what the indictment charged or the proof tended to show.

The indictment alleged that the conspiracy began on or about May 25, 1955 and continued to the date of the indictment. Seven overt acts are alleged, none of which are in themselves criminal or constitute the commission of the substantive offense. Two of these acts consist of conversations in New York between Rich and Perrone and between Rich and Gastwirth on May 26, 1955, prior to delivery of the stolen bales in Philadelphia. Two others relate to telephone conversations on May 27 between Rich in New York and Effron in Philadelphia and Rich in New York and Gastwirth in Philadelphia. These appear to have taken place after the goods had been delivered. The remaining three overt acts relate to payment for transportation of the stolen goods by Effron to Perrone on May 27 and for the goods themselves by Gastwirth to Perrone on May 27 and by Gastwirth to Rich on May 31. These acts plainly took place after transportation had been completed and the last took place in New York some four days thereafter.

The proof at the trial tended to show that the conspiracy, if it existed, did not end when the goods were delivered to the Gastwirth Brothers plant on May 27, but was continuing when the FBI intervened on June 1. In the period between the morning of May 27 and June 1 arrangements were made and completed for payment for the transportation of the goods, substantial payments were made on account of their purchase price, the final payment was arranged for and was about to be made, and arrangements were to be completed for the return of the goods of black color which were unacceptable.

A conspiracy does not end merely because the substantive crime which is its primary object has been completed. The final settling of the financial aspects of the transaction among the conspirators, and other acts necessary to complete the operation on which they were jointly engaged, and to consummate the arrangements between them, are equally part of the conspiracy with the attempt to commit or the commission of the substantive offense which was its prime object. Rettich v. United States, 1 Cir., 84 F.2d 118; McDonald v. United States, 8 Cir., 89 F.2d 128.

There is nothing to the contrary in Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, and Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, on which defendants rely. In the case at bar the acts of the conspirators which took place subsequent to the completion of delivery on May 27 are not merely attempts to conceal a crime already committed, as was the case in Grunewald and Krulewitch. They were affirmative steps in pursuance and furtherance of the conspiracy charged. Cf. Grunewald v. United States, supra, 353 U.S. at page 405, 77 S.Ct. at page 974.

Thus, the conspiracy both as alleged in the indictment and as the proof at the trial tended to show, had not been completed on the morning of May 27 when the goods were delivered, or even on June 1 when the goods were discovered by the FBI on the Gastwirth Brothers' premises and the FBI began questioning the defendants, though no doubt it ended when the latter events occurred.

The jury was carefully instructed at the first trial that the transportation charged in the substantive count had come to an end when the goods were delivered to the Gastwirth Brothers plant in Philadelphia on May 27, and that it was essential in order to convict on that count they find that defendants had knowledge the goods were stolen before the goods had ceased their transportation in interstate commerce. They were also instructed that this was not so as to the conspiracy count, and that

"If you should find that Gastwirth and Effron had knowledge that the goods were stolen and participated in the conspiracy with such knowledge, at any time before the conspiracy came to an end on the evening of June 1, 1955, then that element of the conspiracy count is established as to them."

They were similarly instructed as to Rich.

Under these instructions the jury was entitled to find that defendants did not have knowledge that the goods were stolen prior to the completion of transportation by delivery in Philadelphia on May 27, and were required to acquit on the substantive count if they so found. This was so even if the jury found against the defendants on all the other issues involved in the substantive count. There is nothing to indicate that these were not their findings, and indeed, viewing the record in perspective, it is probable that they were.

On the conspiracy count, however, the jury was entitled to find that even though defendants did not know that the goods were stolen prior to the completion of transportation, they acquired such knowledge while the conspiracy was still continuing between May 27 and June 1, and that therefore while defendants were not guilty on the substantive count they were guilty on the conspiracy count. There would have been nothing inconsistent in such findings. The jury disagreed on the conspiracy count. But the jury on a new trial would be entitled to find defendants guilty on the conspiracy count on the same theory and such a result would be in no way inconsistent with the prior verdict of acquittal on the substantive count.

Thus, the issues before the jury on the substantive count of transportation, or aiding and abetting transportation, were not identical with the issues with respect to the conspiracy count. The core of the case on the substantive count being whether or not defendants had the requisite guilty knowledge before the transportation ceased on May 27, it is plain that the verdict of acquittal on the substantive count did not necessarily determine in defendants' favor any issue essential to defendants' conviction on the conspiracy count. It therefore cannot be said that the doctrine of res judicata bars a re-trial on the conspiracy count.

It may be noted that Cosgrove v. United States, 9 Cir., 224 F.2d 146, and United States v. Simon, 3 Cir., 225 F.2d 260, which defendants cite, while seeming to support a somewhat broader application of the doctrine of res judicata than the cases already cited, (cf. opinion of Mr. Justice Black concurring in result, in United States v. Williams, supra, 341 U.S. at page 85, 71 S.Ct. at page 589), do not hold to the contrary. Cosgrove held that an acquittal on a charge that defendant and an Internal Revenue officer falsely datemarked an estate tax return, was res judicata on a subsequent charge that defendant assisted and counseled the officer to datemark the return falsely. In Simon a subsequent prosecution of defendant on the charge of having received stolen turkeys was held to be barred by a prior conviction of defendant

on the charge of guilty possession of the same turkeys. In both cases the identity of issues in the prior and subsequent trials was plain and the prior verdict necessarily determined issues essential to the subsequent prosecution.

Yawn v. United States, 5 Cir., 244 F.2d 235, on which defendants rely strongly, merely held that acquittal of defendant on a substantive charge of unlawful possession of a still barred proof of the fact of possession of the identical still at the identical time and place as one of the overt acts alleged in a subsequent prosecution for conspiracy to commit the same offense. Since the same facts which constituted the substantive offense had been realleged as an overt act on the conspiracy charge, it was plain that the prior verdict of acquittal had necessarily determined such facts in defendants' favor and that they could not be relitigated in the subsequent conspiracy prosecution.

One further contention made by defendant Rich may be disposed of briefly. Rich, relying on Gillespie v. Walker, 4 Cir., 296 F. 330, urges that the judgment of acquittal as to him on the first two counts conclusively disposed of the whole indictment and operated as an acquittal upon and discontinuance of the remaining conspiracy count upon which the jury disagreed. There is no merit to this contention, nor does Gillespie v. Walker lend it any support. Gillespie dealt with the power of a District Court, after rendering a judgment of sentence upon one count of an information to which the accused had pleaded guilty, to impose a second judgment of sentence against the accused at a later term upon another count of the same information to which the accused had also pleaded guilty. The case has no bearing here.

Defendants' motions to dismiss the conspiracy count upon the grounds of double jeopardy and res judicata are therefore denied. It should be noted, however, that in denying these motions to dismiss I do not necessarily hold that questions relating to the doctrine of res judicata may not arise during the course of the re-trial. My holding is merely

that the prosecution is not barred by that doctrine from re-trying the conspiracy count. The trial court may be required to make rulings or give instructions involving the doctrine on particular questions or issues which may be affected by the prior verdict of acquittal on the substantive count. These are matters which cannot be determined on this motion but are for the trial court if and when they arise.