**UNITED STATES of America, Appellee,**

v.

**Ralph JACOBSON, Defendant-Appellant.**

**No. 376, Docket 76–1345.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 29, 1976.
Decided Dec. 17, 1976.
Certiorari Denied March 28, 1977.
See 97 S.Ct. 1581.

22

Steven K. Frankel, Sp. Atty., U. S. Dept. of Justice, Brooklyn, N. Y. (Robert B. Fiske, Jr., U. S. Atty., Southern District of New York, Jacob Laufer, Sp. Atty., U. S. Dept. of Justice, and Frederick T. Davis, Asst. U. S. Atty., Southern District of New York, New York City, on the brief), for appellee.

James M. LaRossa, New York City (LaRossa, Shargel & Fischetti and Gerald L. Shargel, New York City, on the brief), for defendant-appellant.

Before LUMBARD and VAN GRAAFEILAND, Circuit Judges, and BONSAL, District Judge.*

LUMBARD, Circuit Judge:

Ralph Jacobson appeals from a conviction entered by a Judge Morris E. Lasker on July 23, 1976 after a jury trial in the Southern District of New York. Under 26 U.S.C. § 7206(1) Jacobson was convicted of filing a false and fraudulent 1968 federal income tax return in failing to report interest income derived from money lending and was acquitted on a second, unrelated count that involved an alleged failure to report certain. capital gains on his 1969 return.

On appeal Jacobson contends that the prosecution for failure to report interest income should have been foreclosed because two years earlier he had been acquitted in the Eastern District of having used extortionate means to collect that same interest income, 18 U.S.C. § 894. Since the government's case in the second trial rested on the testimony of a witness whose credibility was necessarily in issue in the first trial when she gave the same story, Jacobson attempts to invoke the principles of double jeopardy and collateral estoppel or, failing this, urges us to exercise our supervisory powers to forbid unfair prosecutorial proceedings. In the alternative, he asks that his conviction be reversed because of an allegedly erroneous jury charge. We affirm.

The government's case against Jacobson for the year 1968 rested primarily on the testimony of one witness, Theresa Lissauer. Mrs. Lissauer testified that she had borrowed over $3000 from Jacobson in 1968 for her financially distressed dress shop in Queens, and that she made payments on this debt in amounts of at least $150 to $200 per week throughout 1968 and up until March 1969. From such payments Jacobson's interest income in 1968 must have totalled over $5000. On his income tax

* Sitting by designation.

return for 1968, however, he reported only $3440 as "miscellaneous income" and listed nothing at all in the box for "interest income." Thus, if fully credited, Lissauer's testimony was clearly sufficient to support a conviction for material misreporting of income. For indirect corroboration of the Lissauer loans the government introduced testimony from several other witnesses that Jacobson had also lent money to them.

The entire theory of the defense was that there had never been a loan transaction. Although Jacobson did not testify himself, several witnesses were called to rebut Lissauer's claims that Jacobson had made frequent visits to her shop to collect payments. Also, Jacobson's niece testified that she and Mrs. Jacobson had ordered dresses from Lissauer only to receive damaged goods; defense counsel argued that the one time Jacobson demanded money from Lissauer was when he was asking for his money back on these defective dresses. After a few hours deliberation the jury convicted Jacobson on the interest income count—and acquitted him on the unrelated count for 1969.

Similar testimony had been adduced from Lissauer and the other witnesses at a previous trial before Judge Dooling in the Eastern District in November 1974. The jury in that trial acquitted Jacobson of charges of having used extortionate means to collect loan payments from Lissauer and several others. When he was later indicted in the instant case, Jacobson moved to dismiss on double jeopardy grounds, but Judge Lasker denied the motion. 404 F.Supp. 1238 (S.D. N.Y.1975).

■ We agree with the district court's conclusion that the prior acquittal on extortion charges does not bar the present prosecution for tax crime. As Judge Lasker noted in his opinion before trial, the doctrine of collateral estoppel acts through the double jeopardy clause to preclude the government from relitigating an issue of fact once the issue has been resolved in the defendant's favor in prior proceedings between the same parties. See, e. g., *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25

L.Ed.2d 469 (1970); *United States v. Cala,* 521 F.2d 605, 607–08 (2d Cir. 1975). However, estoppel applies only to questions that were necessarily resolved by the first jury in reaching its verdict. See, e. g., *United States v. Seijo,* 537 F.2d 694, 698 (2d Cir. 1976). The defendant must demonstrate that the prior jury could not reasonably have grounded its verdict upon an issue other than that which he now seeks to foreclose from consideration. Although the court should not strain to dream up hypertechnical and unrealistic grounds on which the previous verdict might conceivably have rested, *Ashe v. Swenson,* supra, 397 U.S. at 444, 90 S.Ct. 1189, here there is clearly a substantial possibility that the first jury did not actually decide the issue on which estoppel is being sought. Two separate factual elements were necessary to the government's case at the first trial; the jury had to decide whether the loan transactions had taken place and, if so, whether the defendant had used extortionate means to collect on the loans. Based on the evidence and on the closing argument of defense counsel at the first trial, the jury could have acquitted Jacobson solely because the government had failed to prove extortion and not because of any failure of proof on the existence of the loans. Thus, the verdict at the first trial did not establish the nonexistence of the loans for purposes of collateral estoppel at subsequent trials.

■ Even where collateral estoppel does not apply, however, it has been suggested that particularly unfair bifurcations of prosecutions should be prohibited under the double jeopardy clause or under the supervisory power of the federal courts. See *United States v. Mallah,* 503 F.2d 971, 985 n. 7 (2d Cir. 1974); *United States v. Cioffi,* 487 F.2d 492, 496 & n. 4 (2d Cir. 1973). For example, it would be highly questionable to prosecute a conspiracy charge in addition to, and separately from, any substantive offense committed as part of the conspiracy. See *Marakar v. United States,* 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803 (1962); *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960).

Here, however, the crimes charged in the separate indictments involved some substantially different elements. Cf. *United States v. Alessi,* 536 F.2d 978, 981 (2d Cir. 1976), cert. denied, —— U.S. ——, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). The failure to report interest income and the extortion of interest payments are independent acts and they involve different motives and different problems of proof. We therefore find nothing patently unreasonable or unjust in the government's practice of prosecuting tax crimes separately from related income-generating crimes. Jacobson's later tax trial was not improper.

Jacobson's second contention is that the jury was incorrectly charged. Judge Lasker instructed the jury that

> nobody can be convicted merely for putting an item of income in the wrong box, unless you find that by putting it in the wrong box that person intended to defraud the government.

Defense counsel objected to inclusion of the final "intent to defraud" phrase. He argued that 26 U.S.C. § 7206(1) sanctions only the nonreporting of income and thus never applies to a mere misplacement of income.

■ We believe the district court's charge was a correct statement of the law. By its terms § 7206(1) prohibits any willful misreporting of a material fact, not just nonreporting of income. Therefore, where mislabelling of income in order to conceal its source is used for the purpose of frustrating tax enforcement by the government, § 7206(1) is violated. See, e. g., *United States v. DiVarco,* 484 F.2d 670 (7th Cir. 1973), cert. denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974).

Nonetheless, Jacobson points out that the charge may have been too broadly interpreted by the jury under the circumstances peculiar to this case. The words "intended to defraud the government" might be thought to cover the case of a loanshark who reported his interest income in the wrong place on his tax return in order to conceal his involvement in extortionate or usurious credit activities. The jury may have believed Lissauer's testimony as to the existence of the loans but not as to the frequency and size of her payments on the loans; accordingly, they might have concluded that the total amount of interest was under $3440 and was included in Jacobson's 1968 return under miscellaneous income. Thus, it is possible that the jury believed Jacobson had reported all his income and had not sought to evade taxes, but still convicted him for attempting to deceive the government with respect to his loansharking business. It could be argued that convicting a defendant on such grounds violates the fifth amendment privilege against self-incrimination, see generally *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), or that in any event such a conviction is improper under § 7206(1) where the misreporting was immaterial to the collection of taxes. Cf. *United States v. Garcilaso de la Vega,* 489 F.2d 761, 765 (2d Cir. 1974). Accordingly, Jacobson asserts that the jury should have been clearly cautioned against arriving at a conviction in this manner.

■ We need not consider Jacobson's argument, however, because it was never presented to the district court. In its evidence and in its argument to the jury, the defense based its case wholly on the claim that there had been no interest income whatsoever in 1968. The charge on misplacement of income was initially given by Judge Lasker only in connection with the unrelated, capital gains count. At that time defense counsel objected unsuccessfully on the ground that misplacement can never be a valid ground for a conviction under § 7206(1); as we have indicated above, this objection was frivolous. Later, the jury requested further instruction with respect to the interest income count, after conceiving on its own initiative of the possibility that the Lissauer interest income might have been included under "miscellaneous income" on Jacobson's 1968 return. It was in response to this request that Judge Lasker gave the instruction complained of, but there is no indication in the

record that defense counsel made any objection at this later juncture. It is only in the context of the interest income count, however, that the charge suffers from any possible infirmity, and thus Judge Lasker was never alerted to the ambiguity which Jacobson has now brought to our attention. Since the misplacement of income theory was not even argued to the jury by defense counsel on the count now in question, the defendant is precluded from raising a novel complaint about the jury instructions for the first time on appeal. There has been no plain error affecting substantial rights such as would warrant our consideration under Fed.R.Crim.P. 52(b).

Conviction affirmed.