STATE of Missouri, Respondent,

v.

John C. DOMINIQUE, Appellant.

No. WD 31643.

Missouri Court of Appeals,
Western District.

May 26, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Thomas J. Marshall, Public Defender, Moberly, for appellant.

John Ashcroft, Atty. Gen., Madeleine O. Birmingham, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before MANFORD, P.J., WASSERSTROM, C.J., and NUGENT, J.

WASSERSTROM, Chief Judge.

Defendant was charged with stealing under Section 570.030[1] and with burglary in the second degree under Section 569.170, both Class C felonies. A jury found defendant guilty of the stealing charge but not guilty of burglary, and he was sentenced to five years imprisonment. Defendant appeals his conviction alleging three points of error.

Because of defendant's challenge to the sufficiency of the evidence under his second assignment of error, something more than a brief synopsis of the facts is necessary. Whaley's Pharmacy was broken into and a safe was stolen containing a large amount of cash and Schedule II narcotics sometime between the close of business on January 17, 1979, and the opening of business the following morning. Access to the pharmacy was gained by breaking out the lower portion of the rear door with the safe apparently being removed through the same door. The testimony of the owners of the pharmacy indicated that the value of the narcotics stolen was $640, while more than $1,000 in cash was also stolen. The safe also contained certain business papers including the lease and the accounts receivable.

A safe was recovered a few days after the burglary by the Columbia, Missouri, police and after an examination by James Whaley, one of the owners of the pharmacy, it was identified as the stolen safe. The back of the safe had been partially cut away and most of the money and narcotics had been removed. However, there were still accounts receivable cards in the safe which were identified as belonging to Whaley's Pharmacy. The safe was also identified by Whaley at trial as that which was purloined from his premises.

The evidence adduced at trial concerning the whereabouts of defendant on the night of the burglary first place him at the Salty Dog Lounge at about 11:00 in the evening. The defendant entered this establishment and went and talked to his brother, Jim Dominique. Defendant thereupon circulated among the other patrons of this tavern in an attempt to borrow a cutting torch. Kenneth Dubbert testified at trial that he was approached by the defendant in his search for a cutting torch. Dubbert replied that he had such apparatus available and that he would be willing to take it to defendant's brother's apartment that night.

Another witness, Henry Fullmer, testified that he rode with the defendant and Steve Turner from the Salty Dog Lounge to the apartment of Jim Dominique in defendant's white mid-sixties Chevrolet. Fullmer stated that upon arriving at the apartment there was a safe in the back bedroom which looked like the safe which was exhibited at trial. While in the bedroom containing the safe, Fullmer overheard someone say that the safe had come from Whaley's Pharmacy.

At this point, Dubbert arrived at Jim Dominique's apartment with the cutting torch. Fullmer then left the bedroom and went into the living room to apparently act as a lookout. When Fullmer returned to the bedroom after about 30 minutes, the safe had been cut open and the contents removed. The safe was then removed from the apartment and placed in Steve Turner's pickup truck.

Dubbert testified that when he arrived the safe was in a back bedroom lying with its front down. Dubbert was to drop the cutting torch off at the apartment but, upon discovering that no one knew how to use it, he proceeded to cut the safe open for them. Dubbert identified the safe at trial as the same one which he cut open at Jim Dominique's apartment. After cutting through the metal back of the safe there was a certain amount of white rock-like insulation which had to be removed. Immediately after cutting open the safe, Dubbert left the apartment.

The apartment managers for the complex in which Jim Dominique lived testified that at about midnight on the night of the robbery they saw John Dominique and Steve Turner carrying a safe from a white Chev-

---

1. All statutory references are to RSMo 1978, unless specifically noted otherwise.

rolet into the apartment complex. They further testified that the apartment door to defendant's brother's apartment was open and defendant and Turner appeared to be moving the safe into that apartment. Both apartment managers testified that the safe which was shown at trial was the same size and color as the one which they saw defendant moving the night of the burglary.

A search warrant for Jim Dominique's apartment was issued one day after the theft of the safe. An examination of the premises failed to turn up the safe. However the officers did discover a quantity of a white plaster-like substance which was identified as a known safe-insulating material.

## I.

### A.

Defendant's first point on appeal concerns the declination of the trial court to set aside the jury's guilty verdict on the charge of stealing. That point subdivides into two parts. Defendant's first contention, pared to its essentials, asserts that the finding of the jury that defendant was not guilty of second degree burglary is inconsistent with their verdict of guilty on the stealing charge. More specifically, it is defendant's position that the not guilty verdict on the burglary charge entailed a factual determination that defendant was neither present at the scene of the burglary nor was he involved in the burglary. Based on this premise, it is defendant's contention that the jury could not have reasonably found that he participated in stealing property from the premises which he was found not to have burglarized.

In support of his argument, defendant relies principally upon *State v. Cline*, 447 S.W.2d 538 (Mo.banc 1969). *Cline* held that under former Section 560.110 RSMo 1959, the offense of stealing was made dependent upon a finding of burglary; and consequently if the jury did not convict the defendant of burglary, it could not convict him of burglarious stealing. That decision has no application to this prosecution under

Sections 569.170 and 570.030, which differ radically from former Section 560.110.

Burglary in the second degree as defined by Section 569.170 is committed when the defendant "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Stealing as defined by Section 570.030, on the other hand, occurs when the defendant "appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion."

■ It is self-evident that the two crimes with which defendant was charged involve different elements. Burglary second degree requires a determination that the defendant was unlawfully inside a building for the purpose of some criminal activity. Stealing, on the other hand, requires only an unlawful appropriation of some article or service from another. Unlike burglarious stealing under former Section 560.110, neither of these new offenses is dependent on the other. Where a defendant is charged with two separate criminal offenses, each offense involving different elements, a jury may properly find defendant guilty of one offense and not guilty of the other. *State v. Thomas*, 452 S.W.2d 160 (Mo. 1970); *State v. Grant*, 560 S.W.2d 39 (Mo.App. 1977).

■ The fundamental question to be asked in such a situation is whether the offense of which the defendant was found not guilty requires proof of an element unique to that crime and distinct from the elements of the offense of which defendant was found guilty. Second degree burglary, requiring some proof of defendant's unlawful presence in the building, necessarily involves an element not required for a conviction of stealing. It was certainly within the discretion of the jury to find that defendant did not enter or remain in the pharmacy but that he did participate in the theft of the safe. The foregoing reasons suffice to show that the jury verdicts were not inconsistent.

■ Even if it should be assumed, arguendo, that the guilty verdict on stealing was inconsistent with the verdict of not guilty on burglary, a reversal would still not be required. The rule has become firmly established in recent years that in a multi-count prosecution, inconsistency between verdicts on the various counts is not fatal. *State v. Amerson*, 518 S.W.2d 29 (Mo. 1975); *State v. Boyington*, 544 S.W.2d 300 (Mo.App. 1976); *State v. Smith*, 609 S.W.2d 720 (Mo.App. 1980); *State v. McCall*, 602 S.W.2d 702 (Mo.App. 1980); *State v. Larkins*, 518 S.W.2d 131 (Mo.App. 1974).

### B.

Defendant argues secondarily that the application of collateral estoppel to the instant case should operate to nullify the stealing conviction. Specifically, defendant contends that the jury's verdict of not guilty on the burglary charge necessarily involved a finding that defendant did not unlawfully enter or remain in the pharmacy with any criminal intention. Defendant argues that this finding forecloses the conclusion that defendant stole a safe from the pharmacy.

■■ The test for the application of collateral estoppel in such a situation is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *State v. Lewis*, 599 S.W.2d 94 (Mo.App. 1980). In the case at bar the jury could quite easily have based its not guilty verdict on the burglary charge on the lack of proof that defendant was ever on the pharmacy premises rather than on the conclusion that defendant did not participate in stealing the safe. This is sufficient under the *Ashe* test to eliminate any claim of collateral estoppel.

Moreover, the whole concept of collateral estoppel is inappropriate here. That doctrine "means simply that when a [sic] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson, supra*, 397 U.S. at p. 443, 90 S.Ct. at p. 1194; *State v. Lewis, supra* at p. 96. Application requires a prior judgment which then operates to preclude relitigation in a second case. There can be no collateral estoppel by one count against another in the same law suit. In that situation, the only appropriate question is whether there can be inconsistent verdicts—a question already considered above.

### II.

Defendant alleges as his second point of error that all the evidence presented at trial which tended to implicate the defendant was circumstantial and that, viewed as a whole, it was insufficient to support a conviction. The standard of review applicable in these situations which was adopted in *State v. Franco*, 544 S.W.2d 533 (Mo.banc 1976), cert. den. 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977) was later approved in *State v. Biddle*, 599 S.W.2d 182 (Mo.banc 1980). The *Franco* court stated with regard to circumstantial evidence that " 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.' ... [citations omitted] ... [But] the circumstances need not be absolutely conclusive of guilt, and they need not demonstrate impossibility of innocence ..." 544 S.W.2d at 534. *Biddle* expanded upon this and stated that "if the evidence does not preclude a reasonable hypothesis of innocence, it is not sufficient to support a conviction." 599 S.W.2d at 192.

■ The evidence, viewed in a light most favorable to the state and disregarding all unfavorable inferences showed that: (1) on the night of the robbery defendant moved a safe into his brother's apartment; (2) the safe which was moved into defendant's brother's apartment was identified during the period it was there as having come from Whaley's Pharmacy; (3) this safe was opened in defendant's presence by a cutting

torch procured by defendant; (4) after the safe was cut open, some of the contents taken therefrom were handed to defendant who put them in a duffel bag; (5) defendant with others then removed the safe from the apartment and loaded it into a pickup truck; and (6) this safe was later recovered and identified by one of the owners as the safe stolen from Whaley's Pharmacy.

The evidence presented made a submissible case under the governing legal principles, and this point therefore is ruled against the defendant.

### III.

Defendant's final contention is that the trial court erred in overruling his motion for a continuance. The situation which prompted defendant's motion for a continuance resulted from the prosecuting attorney filing an Amended Request for Leave of Court to Endorse Additional Witnesses. This request was delivered to defendant's attorney on January 21 and was filed on January 22, the trial being scheduled for January 24. The additional witnesses sought to be added included the two apartment managers who testified to seeing defendant move a safe into his brother's apartment on the night of the burglary. It is the endorsement of these two particular witnesses to which defendant's attorney objected and which prompted the motion for a continuance. The trial court granted leave to endorse the witnesses, overruled the motion for continuance and the cause proceeded to trial. Defendant's counsel requested an opportunity to interview the two witnesses in question whenever the prosecutor reached the point of calling them; that request was honored, and just before these witnesses testified, the court declared a recess for the purpose of the interviews.

█ Only where a party has shown a clear abuse of the trial court's discretion in granting or denying a motion for a continuance will an appellate court grant any relief. *State v. Cuckovich*, 485 S.W.2d 16 (Mo.banc 1972); *State v. Tash*, 528 S.W.2d 775 (Mo.App. 1975). In addition, it is necessary for the party whose motion has been denied to demonstrate some prejudice due to the late endorsement of the witnesses. Absent such a showing the decision of the trial court will stand. *State v. Lansford*, 594 S.W.2d 617 (Mo.banc 1980); *State v. Cobb*, 444 S.W.2d 408 (Mo.banc 1969); *State v. Davison*, 545 S.W.2d 723 (Mo.App. 1977).

█ During the colloquy between court and counsel concerning these preliminary motions, it was stated and generally agreed that the State had made available all of its files to defense counsel at an early stage. Part of that file was an affidavit in support of a search warrant which showed the existence of a witness or witnesses to defendant and another man moving the safe into the apartment building in question. Defense counsel admitted knowing that much, but claimed he didn't know the names of the witnesses mentioned. However, the prosecuting attorney insisted that the affidavit did mention one of the names. In any event, defendant himself did know who the witnesses were, because he discussed the matter with one of the witnesses two months prior to trial.

These witnesses were reluctant to testify and at first refused to do so. The prosecuting attorney kept the defense attorney advised as to his intentions regarding these witnesses and informed him very shortly after he knew they would testify. Also to be considered is the fact that the State had almost a dozen witnesses from quite some distance, one of whom had come all the way from Florida.

In light of the foregoing, it does not appear that the trial court was guilty of an abuse of discretion as a result of the failure to grant the continuance, nor had defendant demonstrated any resultant prejudice.

Affirmed.

All concur.