567 A.2d 937
## Avery V. FERRELL
v.
## STATE of Maryland.
### No. 13, Sept. Term, 1988.
Court of Appeals of Maryland.

Jan. 9, 1990.

236

José Felipé Anderson, Asst. Public Defender and George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, all on brief), Baltimore, for petitioner and cross-respondent.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent and cross-petitioner.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL*, JJ.

ELDRIDGE, Judge.

This criminal case involves the applicability of the doctrine of collateral estoppel where a defendant was acquitted on one count of a two-count charging document, where the jury was unable to agree on the other count, where the disputed issue under both counts was the same, and where the defendant was subsequently retried for the offense on which the jury had previously been unable to agree.

The pertinent facts, as disclosed by the prosecution's evidence, are as follows. On the morning of April 10, 1985, three women and a school girl were robbed at gunpoint by a lone man carrying a handgun and wearing a ski mask, a blue hooded sweatshirt, a long gray coat and tennis shoes.

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

During the course of the robbery, one of the victims attempted to flee the scene at which time the robber fired a shot from the handgun and grabbed the fleeing victim's pocketbook. As the robber fled the scene, he was followed a short distance by one of the victims who later testified that she observed the robber changing clothes as he was running away.

The police were called, arrived on the scene immediately, and began searching for the robber in a nearby apartment development. One of the officers testified that he observed the defendant, Avery Ferrell, emerging from an apartment building wearing a blue-gray suit, hard shoes, and carrying a gray coat and a shopping bag. As the officer approached him, Ferrell began to walk away at an increasingly brisk pace. According to the officer's testimony, Ferrell dropped the shopping bag and ran behind a building. The officer then observed Ferrell entering a different apartment building and relayed that information to another officer at the scene who arrested Ferrell.[1] When Ferrell was apprehended, he was carrying a three-quarter length gray coat which was identified by one of the victims as looking like the coat the robber wore. None of the victims, however, was able to identify Ferrell as the masked robber. The shopping bag was recovered and found to contain the articles stolen from the victims, along with a handgun containing five live rounds with one spent cartridge, and a ski mask.

The State's Attorney filed four criminal informations against Ferrell, each relating to one of the victims, and each charging the following offenses:

Count 1—Robbery with a deadly weapon;

Count 2—Attempted robbery with a deadly weapon;

Count 3—Robbery;

Count 4—Assault with intent to rob;

---

1. The police officer's testimony concerning the defendant's movements and possession of the shopping bag was directly contradicted by the defendant's testimony.

Count 5—Assault;

Count 6—Theft of less than $300;

Count 7—Use of a handgun in the commission of a felony or crime of violence;

Count 8—Unlawful carrying of a handgun.

A fifth information charged Ferrell with assault with intent to murder one of the victims.

Ferrell has since stood trial four times in the Circuit Court for Baltimore City. At the first trial on the above-described charges, the jury returned a verdict of not guilty of assault with intent to murder and guilty of the other charges except counts 2 and 4.[2] Ferrell moved for a new trial, and the motion was granted.[3] The second trial resulted in a hung jury on all charges submitted to the jury. At the third trial, the State desired that only the charges of armed robbery and use of a handgun in the commission of a felony or crime of violence would be submitted to the jury. The jury found Ferrell not guilty of using a handgun in the commission of a felony or crime of violence, but the jury was unable to reach a verdict as to armed robbery. Once again a mistrial was declared.

The State decided to bring Ferrell to trial a fourth time for armed robbery. Prior to the fourth trial, Ferrell moved to have the armed robbery counts dismissed on the grounds of collateral estoppel and double jeopardy. Ferrell argued that, as the only issue before the jury at the third trial on both the handgun counts and the armed robbery counts was the identity of the robber, his acquittal on the handgun charges necessarily determined the identity issue in his favor, thus precluding the State from relitigating that issue. The trial judge denied the motion. While finding that only one person was accused of robbery with a handgun, and that the disputed issue at the third trial was whether the

---

**2.** It is not clear from the record what happened to counts 2 and 4.

**3.** The new trial was apparently granted on the ground that the jury's verdicts were not unanimous.

defendant was that person, the trial judge took the position that the jury's acquittal on the handgun charges could have been based on some theory other than a determination that the defendant was not the armed robber. At one point the trial judge stated: "How do you know they [the jurors] didn't feel that the gun wasn't used in the robbery, even though there was a gun? I mean, I can't speculate on what the jury determined."

The trial proceeded, and Ferrell was convicted. He was given two fifteen year sentences on two of the armed robbery counts, to be served concurrently, and two ten year sentences on the two remaining counts, to be served consecutively to the fifteen year term and consecutively to each other, for a total of thirty-five years imprisonment.

On appeal to the Court of Special Appeals, Ferrell challenged the convictions on the grounds, *inter alia*, of collateral estoppel and judicial misconduct. The Court of Special Appeals, by a divided court, affirmed. *Ferrell v. State*, 73 Md.App. 627, 536 A.2d 99 (1988). The intermediate appellate court held that the jury could have grounded its acquittal of the handgun charges on an issue other than the disputed issue under the armed robbery charges. Unlike the trial court, however, which had based its decision on the possibility that the jury's acquittal on the handgun charges rested on a theory not supported by the evidence, the Court of Special Appeals held that the jury at the third trial could have found from the evidence that the defendant was an accomplice in the robbery rather than the actual robber who used the handgun. The Court of Special Appeals also held that the conduct of the circuit court did not amount to reversible error.

We granted Ferrell's petition for a writ of certiorari to determine whether the Court of Special Appeals erred in concluding that collateral estoppel did not preclude a retrial on the armed robbery counts and whether the circuit court's conduct constituted reversible error. Since we shall resolve the collateral estoppel issue in Ferrell's favor, we shall not reach the second issue.

I.

 Both the Fifth Amendment to the United States
Constitution and Maryland common law provide that no
person shall be put in jeopardy twice for the same offense.
Moreover, under both the Fifth Amendment and Maryland
common law, it is established that the doctrine of collateral
estoppel is embodied in the double jeopardy prohibition.
*Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d
469 (1970); *Robinson v. State,* 307 Md. 738, 741–743, 517
A.2d 94 (1986); *Bowling v. State,* 298 Md. 396, 401–402, 470
A.2d 797 (1984); *Carbaugh v. State,* 294 Md. 323, 329, 449
A.2d 1153 (1982); *Powers v. State,* 285 Md. 269, 401 A.2d
1031, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d
197 (1979); *Cousins v. State,* 277 Md. 383, 398, 354 A.2d
825, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d
631 (1976). *See also In re Neil C.,* 308 Md. 591, 594, 521
A.2d 329 (1987).

In *Ashe v. Swenson, supra,* the defendant was charged
with the robbery of one of six poker players who had been
robbed by three or four armed men. The only contested
issue in the case was whether the defendant was one of the
robbers. At the end of the trial, the jury found the defen-
dant not guilty. Six weeks later, the defendant was
brought to trial and convicted for the robbery of one of the
other poker players. The United States Supreme Court
reversed the conviction, stating: " 'Collateral estoppel' is an
awkward phrase, but it stands for an extremely important
principle in our adversary system of justice. It means
simply that when an issue of ultimate fact has once been
determined by a valid and final judgment, that issue cannot
again be litigated between the same parties in any future
lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194.

The Supreme Court has applied the collateral estoppel
holding of *Ashe v. Swenson* in several subsequent cases.
*See, e.g., Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096,
32 L.Ed.2d 798 (1972); *Harris v. Washington,* 404 U.S. 55,
92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Simpson v. Florida,*
403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971). *See also*

*United States v. Powell,* 469 U.S. 57, 64, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984).

In *Powers v. State, supra,* 285 Md. 269, 401 A.2d 1031, this Court applied the principles of *Ashe v. Swenson* and its progeny to circumstances similar to those in the case at bar. In *Powers,* the defendant was charged with the armed robbery of two victims, and the attempted armed robbery of a third victim, all at the same time and place. Unlike the facts of *Ashe v. Swenson,* all of the charges against Powers were tried at a single trial. A jury acquitted Powers of charges relating to two of the victims but could not agree on the charge relating to the third victim. When the State decided to retry *Powers* on the armed robbery charge relating to the third victim, Powers filed a motion to dismiss on the ground of collateral estoppel. The trial court denied the motion, but this Court reversed.

The Court in *Powers* held "that the doctrine of collateral estoppel applies after a jury, at a single trial, acquits on one count of a multicount indictment and is unable to agree upon a verdict on a related count of the same indictment involving a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts." 285 Md. at 288, 401 A.2d at 1042. We reasoned that, even though under Maryland common law a mistrial is equivalent to no trial at all, is not a final determination, and resolves no issue, *Cook v. State,* 281 Md. 665, 671, 381 A.2d 671, 674, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978), we could not ignore the fact that in the same trial a final determination of the common issue of ultimate fact had indeed been made on a related count and had been decided in the defendant's favor. The Court stated that "the primary purpose of the doctrine of collateral estoppel is to protect an accused from the unfairness of being required to relitigate an issue which has once been determined in his favor by a verdict of acquittal." 285 Md. at 283–284, 401 A.2d at 1039.

The only disputed issue before the jury in *Powers* was whether Powers had been one of the robbers. By its

verdicts of acquittal, the jury found that Powers had not been one of the robbers. Therefore, the State was precluded from bringing a second prosecution on the count on which the jury could not agree.

There is a difference between *Powers* and the instant case. *Powers* involved separate victims and essentially identical offenses, with the retrial concerning the same offense but a different victim than the ones to whom the earlier acquittals related. The case at bar involves separate victims and offenses which are separate but deemed the same under the required evidence test, and the retrial relates to the same victims but a different offense than that which was the subject of the acquittal at the earlier trial.[4] Nevertheless, the critical questions in applying collateral estoppel are not whether the victim is the same or whether each offense is the same. The important questions are whether the offense for which the defendant was earlier acquitted, and the offense for which he is being retried, each involved a common issue of ultimate fact, and whether that issue was resolved in the defendant's favor at the earlier trial. As Judge Adkins recently stated for the Court in *Robinson v. State, supra,* 307 Md. at 742, 517 A.2d at 96, "the language ... from [*Ashe v. Swenson*] makes it clear that the critical consideration is whether 'an issue of ultimate fact' has been determined in favor of a defendant. The process by which that determination is made ... is not critical." *See, e.g., Turner v. Arkansas, supra,* 407 U.S. at 367–370, 92 S.Ct. 2098–2099 (collateral estoppel precluded trial on robbery charge where defendant, at earlier trial, had been acquitted of murdering same victim, and where

---

4. *See State v. Ferrell,* 313 Md. 291, 297–301, 545 A.2d 653, 656–658 (1988), holding that armed robbery is a lesser included offense of the use of a handgun in the commission of a felony or crime of violence when that felony or crime of violence was the same armed robbery. It is noteworthy that if the jury at the defendant's third trial had acquitted the defendant of the armed robbery charges, and had been hung on the handgun charges, a retrial on the handgun charges would have been precluded by double jeopardy principles. *See Wright v. State,* 307 Md. 552, 562, 515 A.2d 1157 (1986).

issue of ultimate fact was the same). *See also Bowling v. State, supra,* 298 Md. at 402–405, 470 A.2d at 800–802. Moreover, courts applying collateral estoppel where a jury acquits on one count of a multicount indictment but is deadlocked on another count have made no distinction between situations where the two offenses are the same and those where the two offenses are different. The doctrine is applied regardless. If the court decides that an issue has been determined in a defendant's favor, then collateral estoppel will preclude the prosecution from relitigating that issue. *See, e.g., United States v. Gornto,* 792 F.2d 1028, 1031 (11th Cir.1986); *United States v. Larkin,* 605 F.2d 1360, 1370–1371 (5th Cir.1979), *modified on other grounds,* 611 F.2d 585 (5th Cir.1980), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980); *United States v. Mespoulede,* 597 F.2d 329, 336–337 (2d Cir.1979); *United States v. Hans,* 548 F.Supp. 1119, 1124 (S.D.Ohio 1982); *United States v. Flowers,* 255 F.Supp. 485 (E.D.N.C.1966).

As previously mentioned, the trial judge, although finding that the only issue at the third trial in this case was the identity of the lone robber who used an operative handgun, nevertheless speculated that the jury's acquittal on the handgun charge could have been based on some theory conjured up by the jury and having nothing to do with the identity of the armed robber. The Court of Special Appeals, on the other hand, purported to find some indication in the record that the jury at the third trial might have grounded its verdict on a finding that the defendant was an accomplice in the robbery as opposed to being the actual robber. Neither the trial court's nor the Court of Special Appeals' position is tenable in light of the case law and the record here.

In *Ashe v. Swenson, supra,* the Supreme Court stated that the "decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." 397 U.S. at 444, 90 S.Ct. at 1194. "[T]his approach requires a court

to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Ibid.* In *Simpson v. Florida, supra,* 403 U.S. at 385, 91 S.Ct. at 1802, the Court indicated that collateral estoppel precluded a retrial following an acquittal where the "sole disputed issue at each of [petitioner's] trials" was the same, namely petitioner's identity as a perpetrator of the armed robbery. *See Turner v. Arkansas, supra,* 407 U.S. at 368–369, 92 S.Ct. at 2098–2099 (Court reviewed trial record, including jury instructions, in determining that issue at the two trials was the same); *Sealfon v. United States,* 332 U.S. 575, 580, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948) (Court reviewed evidence and prosecution's theory at first trial, in determining that acquittal on a conspiracy charge precluded subsequent prosecution for substantive offense); *Bowling v. State, supra,* 298 Md. at 402–403, 470 A.2d at 800–801.

■ Consequently, in determining whether the State at a subsequent trial is attempting to relitigate an issue which was resolved in the defendant's favor at an earlier trial, a court must realistically look at the record of the earlier trial, including the pleadings, the evidence, the prosecution's theory, the disputed issues, and the jury instructions. A court should not, as did the trial court in the instant case, ignore the evidence and disputed issues at the earlier trial and speculate that the jury's acquittal might have been based on a theory having nothing to do with the evidence and issues presented to the jury.

Moreover, in reviewing the earlier trial to determine the jury's basis for the acquittal, a court "should not strain to dream up hypertechnical and unrealistic grounds on which the previous verdict might conceivably have rested." *United ed States v. Jacobson,* 547 F.2d 21, 23 (2d Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977). *See also United States v. Mespoulede, supra,* 597 F.2d at 333. " '[U]nrealistic and artificial speculation about some

far-fetched theory upon which the jury might have based its verdict of acquittal' is foreclosed." *State v. Edwards,* 310 N.C. 142, 145, 310 S.E.2d 610, 613 (1984), quoting *United States v. Sousley,* 453 F.Supp. 754, 762 (W.D.Mo.1978).

The record in this case is devoid of any indication that the jury at the third trial could have rationally based its acquittal on the handgun charges upon the accomplice theory suggested by the Court of Special Appeals or upon any issue other than the identity of the lone robber. Nowhere in the evidence is there a suggestion of an accomplice. Indeed, the State throughout all of the trials established that there was only one robber.[5] All testimony and other evidence put on by the State were designed to convince the jury that the defendant Ferrell was the man who robbed the four victims with a handgun and fired the gun at one of the victims. The only theory posited throughout was that there had been one gun and one robber, and that Ferrell was the robber. In fact, the State's attorney said in his closing argument at the fourth trial that there is no dispute as to whether an armed robbery took place. "The dispute ... becomes whether or not this defendant Avery Vincent Ferrell was the young man who on that morning wore this mask pulled down over his face and wore this gray coat" to rob the four victims. The record discloses that during the third trial the State maintained the same theory of the case as in the fourth trial. Ferrell's only disagreement with the State's theory was that he was not the lone armed robber.

---

**5.** The record before us does not contain a complete transcript of the third trial. Portions were ordered by the Court of Special Appeals. Since the third trial resulted in no verdict adverse to the defendant, there was no reason for him to have ordered a transcript under Maryland Rule 8–411. Moreover, until the case reached the Court of Special Appeals, it was undisputed that at the third trial the only contested issue under both the handgun and the armed robbery counts was the identity of the sole robber using a handgun. Because there was no dispute in the trial court as to this matter, there was little reason for the defendant to have ordered a transcript. Despite the absence of a complete transcript, the record is sufficient for us to decide this case.

During the hearing on Ferrell's motion to dismiss prior to the fourth trial, the trial judge, who also presided over the third trial, stated the issue at the third trial as follows: "[W]e all agree one person is accused of doing it, and one person is accused of doing it with the use of a handgun, and the defendant says I am not that person...." Later the trial judge reiterated that "everybody agrees" that there was a crime of violence committed by one person with a handgun, and the issue is whether the defendant is that person. The prosecution at no point disagreed with the trial court's statements concerning the case and the issue. Furthermore, in Ferrell's written motion to dismiss, he pointed out that "[a]t each trial, the State's theory was that there was only one robber involved, the defendant, and there was no dispute that a gun was used by that robber." The State expressed no disagreement with this. Thus, it has been undisputed in this case that an armed robbery was committed by one man with an operative handgun. Ferrell's only defense was that he was not that man.

Ferrell was tied to this crime because of the long gray coat he was carrying when he was arrested and testimony that he was seen with the shopping bag containing the stolen goods.[6] There was never a positive identification made of the robber by the victims. Furthermore, when he was arrested Ferrell was dressed nothing like the robber. The State attempted to explain this discrepancy through the testimony of one of the victims who saw the robber changing clothes as he fled the scene. In closing argument, the State went to great lengths to tie all of this circumstantial evidence to Ferrell in an attempt to persuade the jury that Ferrell was indeed the man who terrorized the four victims with a gun. Finally, the jury was never given an accom-

---

**6.** As previously mentioned, at the fourth trial, one of the arresting officers testified that he saw Ferrell drop the shopping bag at the corner of an apartment building. It came out on cross examination, however, that at the third trial this same witness testified that he did not actually see the dropping of the bag.

plice instruction at either the third trial or the fourth trial.[7]

■ The State's argument, accepted by the Court of Special Appeals, that the acquittal on the handgun charges might reasonably have been based on a jury finding that Ferrell was an accomplice, instead of the person wielding the handgun, is totally contrary to the record in this case. *See Turner v. Arkansas, supra,* 407 U.S. at 369–370, 92 S.Ct. at 2098–2099 (applying collateral estoppel and rejecting, based upon review of record and jury instructions, State's argument that acquittal on murder charge at first trial might be based on theory that petitioner was accomplice of murderer and thus might be subsequently prosecuted for robbery of the same victim). The sole disputed issue at the third trial, and the issue submitted to the jury, was whether the defendant Ferrell was the one person involved in robbing the four victims with a handgun. Under the principles set forth in *Ashe v. Swenson, supra,* and *Powers v. State, supra,* the acquittal on the handgun charge resolved this identity issue in Ferrell's favor and precluded the State from relitigating the issue.

## II.

Alternatively, the State argues that we should overrule *Powers v. State.* The State contends that *Powers* was wrongly decided and that collateral estoppel should not prevent a retrial on a count of an indictment where the jury had been unable to agree, but where the jury had acquitted on another count of the indictment having a common issue of ultimate fact which, if found in the defendant's favor, would establish his innocence on both of the counts.

In the present case, in *Powers,* and in similar cases arising elsewhere, various arguments have been made against the application of collateral estoppel under circumstances like those in this case. The great majority of cases, however, have rejected these arguments.

---

7. During Ferrell's pre-trial motion to dismiss at the fourth trial the trial judge discussed how she charged the jury at the third trial. No accomplice instruction was included in that charge.

The principal arguments that have been made against applying collateral estoppel in this situation have involved reliance upon the rule that inconsistent jury verdicts ordinarily are tolerated. *See, e.g., Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157 (1986); *Shell v. State,* 307 Md. 46, 53–55, 512 A.2d 358 (1986); *Mack v. State,* 300 Md. 583, 593–595, 479 A.2d 1344 (1984); *Ford v. State,* 274 Md. 546, 551–553, 337 A.2d 81 (1975), and cases there reviewed. This reliance is misplaced for two reasons.

■ First, as this Court pointed out in *Powers,* there is no inconsistency between an acquittal on one count and no verdict on another count. The Court there stated (285 Md. at 285, 401 A.2d at 1040):

"In our view, there can be no inconsistency in a jury's findings of fact when it acquits on one count and is unable to agree on another count having a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts. In Maryland, a mistrial is equivalent to no trial at all. *Cook v. State,* 281 Md. 665, 671, 381 A.2d 671, 674 (1978). It is not a final determination and decides no question of fact. Accordingly, a jury's failure to agree, which results in a mistrial, does not establish any facts, and thus cannot establish facts inconsistent with those established by its verdicts of acquittal. *United States v. Smith,* 337 A.2d [499] at 503–04 [1975] (Kern, J., concurring).

"*Ashe* requires the doctrine of collateral estoppel to be applied whenever an issue of ultimate fact has once been determined by a valid and final judgment of acquittal. 397 U.S. at 443, 90 S.Ct. at 1194. Here, the only valid and final judgments before us are the jury's verdicts of acquittal. There is no question that those verdicts do constitute a valid determination of issues of ultimate fact. Because the jury's failure to agree did not decide any facts, it did not make the validity of that determination questionable. Accordingly, the doctrine of collateral estoppel applies."

Second, even if the jury's failure to agree on one count is viewed as inconsistent with an acquittal on another count of a multicount indictment where the disputed issue under both counts was the same, the rule that inconsistent jury verdicts are allowed has no application to the situation in *Powers* and in the present case. The rule concerning inconsistent jury verdicts simply means "that a conviction on one count may ... stand ... [despite] an inconsistent acquittal on another count." *Ford v. State, supra,* 274 Md. at 552, 337 A.2d at 85, quoting *Leet v. State,* 203 Md. 285, 293, 100 A.2d 789 (1953). It relates to inconsistency at the same trial, and has no application to successive trials.[8] *See United States v. Powell, supra,* 469 U.S. at 64, 68, 105 S.Ct. at 476, 478 (inconsistent verdict rule applies "to verdicts rendered by a single jury"; it applies where "the same jury reached inconsistent results"). The rule does not authorize a second trial on an issue which has been resolved against the prosecution. Referring to language in *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), which suggested that there may be inconsistent verdicts at successive trials, where the first verdict was an acquittal, the Supreme Court in the *Powell* case, 469 U.S. at 64, 105 S.Ct. at 476, stated:

"The ... statement [from *Dunn*], if not incorrect at the time, see *United States v. Oppenheimer,* 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916), can no longer be accepted in light of cases such as *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which hold that the doctrine of collateral estoppel would apply under those circumstances."

As the Supreme Court further pointed out in *Powell,* inconsistent verdicts in the context of a single jury trial are

---

**8.** Some of the decisions relied on by the State in the present case simply involve the inconsistent verdict rule in the context of a single trial, and do not involve an attempted reprosecution. *See, e.g., State v. Dominique,* 619 S.W.2d 782, 786 (Mo.App.1981).

tolerated for certain policy reasons even though they represent "jury irrationality," whereas "principles of collateral estoppel ... are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict ...," 469 U.S. at 67–68, 105 S.Ct. at 478. When it comes to the prosecution's attempted relitigation at a second trial, of an issue resolved in the defendant's favor by an acquittal at an earlier trial, collateral estoppel and the assumption of jury rationality is applicable.

The difference between inconsistent verdicts in a single trial and the situation in the present case was discussed in detail in *United States v. Flowers, supra,* 255 F.Supp. 485, one of the opinions relied upon by the State in the instant case (State's brief, p. 21). In *Flowers,* the jury at the first trial acquitted the defendant on several counts of an indictment and was unable to agree on several other counts, and the prosecution attempted to reprosecute the defendant on those counts where the jury was unable to agree. The court held that collateral estoppel barred the reprosecution on those counts having the same issue of ultimate fact which was resolved by the earlier acquittals. Addressing the prosecution's reliance on the rule that inconsistent jury verdicts are tolerated, the court in *Flowers,* 255 F.Supp. at 487, initially observed that, with regard to the permissibility of the reprosecution,

"[i]t must be assumed that the [earlier] jury was aware of all the facts in evidence and that it logically and properly applied the instructions of the court in reaching its verdict of acquittal. The possibility that the jury acquitted by reason of charity, compromise or simple frustration flowing from hours of tedious debate is barred from the court's consideration."

The court then stated (*id.* at 487–488):

"Had the jury in the instant case convicted the defendant on one of the counts on which they failed to reach a verdict, the conviction would not be subject to attack on the ground of inconsistency with any of the other counts upon which the defendant was acquitted. However, the

jury did not convict Flowers on any of the 26 counts of the indictment; a conviction on one of the 13 remaining counts would be rendered by a different jury at a point later in time. As in *Dunn,* any inconsistency would be between different counts of the same indictment but, as in *Sealfon,* a conviction would come at a date later than the acquittal on the other counts and from a new jury."

\* \* \* \* \* \*

"In the context of a situation such as that presented here, i.e., a verdict of acquittal on some counts coupled with the jury's inability to reach a verdict on other counts, the application of the *Sealfon* rationale requires the Court to assume that the jurors have been logical in reaching their decision on the acquitted counts, yet the ultimate result will often be a conclusion that the jurors, or some of them, were illogical and inconsistent in failing to acquit on the remaining counts."

Turning to the cases relied on by the prosecution, the *Flowers* court explained (*id.* at 489):

"The government relies upon language in *United States v. Petti,* 168 F.2d 221, 224 (2d Cir.1948), to the effect that the doctrine of res judicata has no application to different counts in the same indictment or to consolidated indictments. Similar wording has been used in a number of cases.... [citations omitted]. These statements, however, have uniformly been uttered against the factual background of allegedly inconsistent jury verdicts rendered at the same time by the same jury and must be construed against that background. In contrast, the issue to be determined here is whether a verdict of guilty upon a retrial by a new jury would necessarily be inconsistent with the finding of not guilty on any of the 13 counts of the indictment disposed of at the first trial.

"My conclusion [is] that the collateral estoppel principle is applicable in the instant setting...."

The court also pointed out (*id.* at 488) that the authorities "uniformly support the application of the collateral estoppel principle to the situation where, as here, the jurors

have acquitted on some counts and have been unable to reach a verdict on others. See *United States v. Kenny,* 236 F.2d 128 (3d Cir.), *cert. denied,* 352 U.S. 894, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956) (separate indictments tried together); *Cosgrove v. United States, supra* [224 F.2d 146 (9th Cir.1955)], (multiple count indictment); *United States v. Perrone,* 161 F.Supp. 252 (S.D.N.Y.1958) (multiple count indictment)."

The applicability of the inconsistent verdict rule, under circumstances like those in the present case, was also discussed in detail by the United States Court of Appeals for the Second Circuit in *United States v. Mespoulede, supra,* 597 F.2d at 336–337. As in the case at bar, *Mespoulede* involved an acquittal on one count of an indictment and a hung jury on a second count, where both counts involved a common issue of fact. The government reprosecuted the defendant on the second count. In holding that the principles of collateral estoppel were applicable to the second trial, the United States Court of Appeals stated (597 F.2d at 336):

"Finally, it is argued that the principles of collateral estoppel are inapplicable to the retrial of charges contained in a multi-count indictment.…

"At first blush, it may seem odd that such a broad rule is pressed upon us, especially since the burden of litigating an issue that the defendant thought had been laid to rest for all time is no lighter than in the first trial. And indeed, with virtual unanimity, the cases have applied collateral estoppel to bar the Government from relitigating a question of fact that was determined in defendant's favor by a partial verdict. *See Green v. United States,* 138 U.S.App.D.C. 184, 426 F.2d 661 (1970) (*per curiam* ); *Travers v. United States,* 118 U.S.App.D.C. 276, 281, 335 F.2d 698, 703 (1964); *Cosgrove v. United States,* 224 F.2d 146 (9th Cir.1955); *United States v. Flowers,* 255 F.Supp. 485 (E.D.N.C.1966); *United States v. Pappas,* 445 F.2d 1194, 1199 (3d Cir.) (dictum), *cert. denied,* 404 U.S. 984, 92

S.Ct. 449, 30 L.Ed.2d 368 (1971); *United States v. Perrone*, 161 F.Supp. 252, 258–59 (S.D.N.Y.1958) (dictum)."

Turning to the government's reliance upon the inconsistent verdict rule, the court said (*id.* at 336–337):

"But it hardly follows from the fact that a single jury in one trial is allowed to render inconsistent verdicts that a *second* jury in a *second* trial should be permitted to rely on the evidence rejected by the first.

"We tolerate inconsistencies in unified jury verdicts in criminal cases, not because of any singular virtue we attribute to inconsistency, but rather out of deference to the nature of the jury and the role it plays in our jurisprudence."

And later the court continued (*id.* at 337):

"Internal inconsistency . . . is not an end in itself, and it would be irrational to expand gratuitously the judicial tolerance of inconsistent verdicts to permit different juries in successive trials to reach contradictory results. Allowing a second jury to reconsider the very issue upon which the defendant has prevailed serves no valuable function. To the contrary, it implicates concerns about the injustice of exposing a defendant to repeated risks of conviction for the same conduct, and to the ordeal of multiple trials, that lie at the heart of the double jeopardy clause. *See, e.g., Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)."

Another argument made against applying collateral estoppel in the circumstances of the case at bar, is that the earlier jury, because it was hung on certain counts involving the common issue of ultimate fact, did not resolve that issue in the defendant's favor. In other words, by focusing exclusively on the count or counts where the jury was unable to agree, there may be some force in the contention that the jury did not decide the critical issue in the defendant's favor. Nevertheless, as discussed by the court in *United States v. Flowers, supra*, 255 F.Supp. at 487–488, principles of collateral estoppel require that the focus be upon the jury's earlier acquittal, with that acquittal being

viewed as a rational resolution of the underlying facts. Moreover, it is logical to focus upon the counts where the jury reached verdicts rather than upon counts representing no decision and establishing nothing. *See Powers v. State, supra,* 285 Md. at 285, 401 A.2d at 1040.

The State in the present case also invokes the settled rule that the double jeopardy prohibition ordinarily does not preclude a retrial following the declaration of a mistrial because the jury was unable to agree. *See, e.g., Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824); *Wooten–Bey v. State,* 308 Md. 534, 542–543, 520 A.2d 1090, *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 853 (1987); *In re Mark R.,* 294 Md. 244, 250–251, 449 A.2d 393 (1982), and cases there cited. Those cases, and others like them, did not involve a collateral estoppel bar because of an acquittal at the earlier trial on a count having a common issue of ultimate fact with the count on which the jury was hung and which is the subject of the second prosecution. In the instant case, if the jury had not acquitted the defendant of the handgun charges, or if the handgun charges had not involved the same disputed issue as the armed robbery charges, the above-cited cases would be fully applicable and a retrial on the armed robbery charges would not be precluded by double jeopardy principles. *See Wooten–Bey v. State, supra,* 308 Md. at 543–545, 520 A.2d at 1094–1095, for a discussion of this very distinction. Nothing in the above-cited cases, however, supports the view that the State is entitled to relitigate the facts or issues resolved against it by a previous acquittal. Instead, as the Supreme Court has stated, the policy of the double jeopardy prohibition "protects the accused from attempts to relitigate the facts underlying a prior acquittal," *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

As previously indicated, the overwhelming majority of cases take the position that the principles of collateral

estoppel are applicable to the situation presented in *Powers v. State, supra,* 285 Md. 269, 401 A.2d 1031, and in the case at bar. *See, e.g., United States v. Gornto, supra,* 792 F.2d 1028; *United States v. Bowman,* 609 F.2d 12, 17 (D.C.Cir. 1979); *United States v. Larkin, supra,* 605 F.2d 1360; *United States v. Mespoulede, supra,* 597 F.2d 329; *Green v. United States,* 138 U.S.App.D.C. 184, 426 F.2d 661 (1970); *United States v. Kenny,* 236 F.2d 128, 130 (3d Cir.), *cert. denied,* 352 U.S. 894, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956); *Cosgrove v. United States,* 224 F.2d 146 (9th Cir.1954); *United States v. Hans, supra,* 548 F.Supp. at 1124–1126; *United States v. Mulherin,* 529 F.Supp. 916, 933 (S.D.Ga. 1981), *aff'd,* 710 F.2d 731, 740–743 (11th Cir.1983), *cert. denied,* 464 U.S. 964, 465 U.S. 1034, 104 S.Ct. 402, 1305, 78 L.Ed.2d 343, 79 L.Ed.2d 703 (1983, 1984); *United States v. Flowers, supra,* 255 F.Supp. 485; *Oliver v. Superior Court,* 92 Cal.App. 94, 267 P. 764 (1928); *Com. v. Todd,* 348 Pa.Super. 453, 502 A.2d 631 (1985); *Com. v. Jones,* 274 Pa.Super. 162, 418 A.2d 346, 350–351, *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).[9] In light of this authority, and the reasons underlying the holding in *Powers v. State, supra,* we adhere to that holding.

The State in this case had more than " 'one full and fair opportunity to convict' "[10] the defendant Ferrell of robbery with a handgun. After three trials, a jury acquitted Ferrell of committing robbery with a handgun. Consequently, the State should not have been permitted to relitigate this issue at a fourth trial.

---

**9.** There is a minority position, represented mostly by cases in New Jersey. *See State v. Esposito,* 148 N.J.Super. 102, 371 A.2d 1273, *certif. denied,* 74 N.J. 260, 377 A.2d 669 (1977); *State v. Triano,* 147 N.J.Super. 474, 371 A.2d 734 (1974); *United States v. McGowan,* 385 F.Supp. 956 (D.N.J.1974). *But see United States ex rel. Triano v. Superior Court of N.J.,* 393 F.Supp. 1061 (D.N.J.), *aff'd* 523 F.2d 1052 (3d Cir.1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 787, 46 L.Ed.2d 645 (1976).

**10.** *Wright v. State, supra,* 307 Md. at 577 n. 5, 515 A.2d at 1170 n. 5, quoting *Ohio v. Johnson,* 467 U.S. 493, 502, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984).

JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED, AND CASE REMANDED TO THAT COURT
WITH DIRECTIONS TO REVERSE THE JUDGMENT OF
THE CIRCUIT COURT FOR BALTIMORE CITY AND TO
REMAND THE CASE TO THE CIRCUIT COURT FOR
BALTIMORE CITY WITH DIRECTIONS TO DISMISS
THE INFORMATIONS. COSTS IN THIS COURT AND
IN THE COURT OF SPECIAL APPEALS TO BE PAID BY
THE MAYOR AND CITY COUNCIL OF BALTIMORE.

McAULIFFE, Judge, dissenting.

I disagree with Part I of the Court's opinion, and with the result. The doctrine of collateral estoppel prohibits the State from relitigating a fact that has been finally decided against the State in a previous proceeding between the parties. Ferrell says, and the majority agrees, that this record shows that the jury in the third trial decided that Ferrell was not the person who robbed these four victims. I cannot agree.

In the first place, the record that Ferrell presents for this Court's consideration is insufficient to show much of anything about what occurred at the third trial. In the face of clear language by the Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), repeated by this Court in *Powers v. State*, 285 Md. 269, 278, 401 A.2d 1031, *cert. denied*, 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979), that a court deciding a claim of collateral estoppel must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter," Ferrell did not provide a transcript of the proceedings of the third trial. The majority refers to the "absence of a complete transcript," when in fact we have virtually no transcript. At the direction of the Court of Special Appeals, the State furnished a few pages of transcript to assist that court in understanding the grounds for dismissal of certain other counts by the trial judge. Apart from that, as Judge Wilner pointed out for the Court of Special Appeals, no transcript was provided:

[N]o part of the proceedings of the third trial, save the few pages of transcript dealing with the disposition of Counts 2–7, furnished by the State in response to our order, has been included in the record. We don't know, other than in a general way, what evidence was presented to that third jury; nor do we know what instructions were given or what argument was made to the jury. *Ferrell v. State,* 73 Md.App. 627, 634, 536 A.2d 99 (1988).

More important, however, is this point—whatever the jurors in the third trial might have decided, we can be sure they did not decide that Ferrell was *not* the robber. Had they decided that, they would have found Ferrell not guilty of the robbery as well. It is absolutely illogical to conclude that the same jurors who unanimously found that Ferrell was not the man who robbed these victims with a handgun would be unable to reach a verdict on the robbery count.

The majority apparently holds that because the State is unable to demonstrate exactly why the jury reached the conclusion it did, the defendant must prevail. That, I suggest, is not a proper application of the principles of collateral estoppel.

The Supreme Court has said that the relevant inquiry is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194. The Court cautioned that the inquiry must be approached "with realism and rationality," and "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." The only practical and rational conclusion that I can reach upon consideration of all the known circumstances of the third trial is that the jury could not have concluded that which Ferrell argues it must have concluded.

I cannot be certain why the jury found as it did on the charge of use of a handgun in the commission of a felony or a crime of violence. It may have erroneously concluded that the defendant did not "use" the handgun because no

one was shot. It may have felt that the State had not proven the gun involved was a "handgun" within the meaning of our statute.[1] One cannot say, without speculating, why the jury reached the verdict it did. One can say, however, with confidence, that the jury did not reach that verdict because they found the defendant was not involved. I would affirm the conviction.

---

1. A "handgun" is defined by Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 36F. The definition does not include all hand-held guns or pistols. *See Howell v. State,* 278 Md. 389, 395–96, 364 A.2d 797 (1976).